**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

PHILIP R. SHAWE, *et al.*,

               Plaintiffs,

    v.

ANDRE G. BOUCHARD, in his Official capacity
as Chancellor of the Court of Chancery for the State
of Delaware,

               Defendant.

Case No.: 20-cv-1770 (MAK)

**BRIEF IN SUPPORT OF CHANCELLOR BOUCHARD'S
MOTION TO DISMISS AMENDED COMPLAINT**

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

John K. Villa (admitted *pro hac vice*)
William T. Burke (admitted *pro hac vice*)
Anne M. Rucker (admitted *pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Tel.: (202) 434-5000

Ryan Costa
Deputy Attorney General
Carvel State Bldg., 6th Fl.
820 N. French Street
Wilmington, DE 19801
Tel.: (302) 577-8400

*Attorneys for Defendant Andre G. Bouchard,
Chancellor of the Court of Chancery for the
State of Delaware*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................. iii

STATEMENT OF NATURE AND STAGE OF THE PROCEEDINGS ..................... 1

SUMMARY OF ARGUMENT .............................................................................. 2

STATEMENT OF FACTS ..................................................................................... 3

      A.     The Court of Chancery, Affirmed by the Delaware Supreme Court, Appoints a Custodian to Oversee a Judicially Ordered Sale of TPG. .................... 4

      B.     The Post-Closing Fee Petitions, November 2019 Orders, and Tactical Decisions by Plaintiffs. ................................................................. 6

      C.     Plaintiffs' Appeals to the Delaware Supreme Court. ............................... 8

      D.     Recent Proceedings in the Court of Chancery. ..................................... 8

      E.     Plaintiffs File This Federal Action. ................................................... 9

DISCUSSION ................................................................................................... 10

I.     THIS CASE SHOULD BE DISMISSED BECAUSE IT IS MOOT ............................... 10

II.    THE COURT SHOULD ABSTAIN FROM EXERCISING JURISDICTION. ............... 13

III.   PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(B)(6) ........................................................................................ 16

      A.     Plaintiffs Fail to State a First Amendment Claim (Count 1). ............................ 16

      B.     Plaintiffs Fail to State a Due Process Claim (Count 2)......................................... 19

CONCLUSION ................................................................................................. 20

## TABLE OF AUTHORITIES

*Alvin v. Suzuki*, 227 F.3d 107 (3d Cir. 2000) ................................................................20

*Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339
    (3d Cir. 1986) ...........................................................................................................18

*Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108 (3d Cir. 1986) ......................................17

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985) .........................................20

*Cnty. of Morris v. Nationalist Movement*, 273 F.3d 527 (3d Cir. 2001).........................10

*Constand v. Cosby*, 833 F.3d 405 (3d Cir. 2016) ..........................................................12

*Elting v. Shawe*, 185 A.3d 694 (Del. 2018) .....................................................................5

*Elting v. Shawe*, 2015 WL 4874733 (Del. Ch. Aug. 13, 2015) ........................................4

*Globe Newspaper Co. v. Superior Court,* 457 U.S. 596 (1982) .....................................17

*Holland v. Bouchard*, 2017 WL 4180019 (S.D.N.Y. Sept. 19, 2017) ....................1, 3, 15

*In re Avandia Mktg., Sales Prac. & Prods. Liab. Litig.*, 924 F.3d 662 (3d Cir. 2019)..................17

*In re Cantwell*, 639 F.2d 1050 (3d Cir. 1981) ................................................................13

*In re English Seafood Inc.*, 743 F. Supp. 281 (D. Del. 1990) .........................................15

*In re TransPerfect Glob., Inc.*, 2015 WL 4778615 (Del. Ch. Aug. 13, 2015)..................4

*In re TransPerfect Glob., Inc.*, 2018 WL 904160 (Del. Ch. Feb. 15, 2018).....................5

*In re TransPerfect Glob., Inc.*, 2019 WL 5260362 (Del. Ch. Oct. 17, 2019)...........3, 5, 6

*In re TransPerfect Glob., Inc.*, 2019 WL 6358786 (Del. Ch. Nov. 27, 2019)...................8

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982) .........13

*Mollett v. Leicth*, 511 F. App'x 172 (3d Cir. 2013) .......................................................10

*N. Jersey Media Grp. v. U.S.*, 836 F.3d 421 (3d Cir. 2016) ..........................................17

*Nicini v. Morra*, 212 F.3d 798 (3d Cir. 2000).................................................................16

*Nixon v. Warner Commc'ns*, 435 U.S. 589 (1978) ...................................................18, 19

*PDX N., Inc. v. Comm'r N.J. DOL & Workforce Dev.*, 978 F.3d 871 (3d Cir. 2020)..................14

*Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987)........................................................14, 16

*Port Authority Police Benevolent Ass'n v. Port Authority Police Department*,
973 F.2d 169 (3d Cir. 1992)...................................................................................14, 16

*Publicker Indus. v. Cohen*, 733 F.2d 1059 (3d Cir. 1984).............................................17

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984)...................................................17

*Shawe v. Elting*, 157 A.3d 142 (Del. 2017) ................................................................5

*Shawe v. Elting*, 157 A.3d 152 (Del. 2017) ................................................................4

*Shawe v. Elting*, 2017 WL 2813060 (N.Y. Sup. Ct., N.Y. Cty. June 29, 2017) ...............1

*Shawe v. Pincus*, 265 F. Supp. 3d 480 (D. Del. 2017)..................................................2

*Shawe v. Potter Anderson & Corroon LLP*, 2017 WL 6397342 (D. Del. Dec. 8, 2017) .........3, 18

*Silver v. Court of Common Pleas*, 802 F. App'x 55 (3d Cir. 2020) ...............................14

*Sixth Angel Shepherd Rescue, Inc. v. Schiliro*, 596 F. App'x 175 (3d Cir. 2015) .........15

*Southmark Prime Plus, L.P. v. Falzone*, 776 F. Supp. 888 (D. Del. 1991) ...................4

*Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013)...........................................13, 14

*TransPerfect Glob., Inc. v. Pincus*, 224 A.3d 203 (Del. 2019).................................8, 16

*U.S. ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, 839 F.3d 242
(3d Cir. 2016)......................................................................................................10

*Wilson v. MVM, Inc.*, 475 F.3d 166 (3d Cir. 2007) .....................................................20

*Winer Family Tr. v. Queen*, 503 F.3d 319 (3d Cir. 2007) ...........................................4

*Younger v. Harris*, 401 U.S. 37 (1971)......................................................................13

*Zinermon v. Burch*, 494 U.S. 113 (1990)...................................................................20

## STATUTES AND RULES

8 Del. C. § 226 .........................................................................................................1, 4

42 U.S.C. § 1983 .......................................................................................................9, 16

Del. Ch. R. 5.1 ..........................................................................................................11

## STATEMENT OF NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs' Amended Complaint suffers from the same fundamental defects as the original:  (i) it is moot; (ii) it is an impermissible attempt to interfere with ongoing state court litigation; and (iii) it does not state a claim for a constitutional violation as a matter of law.

This case concerns ongoing state-court litigation in which the Court of Chancery of the State of Delaware, affirmed by the Delaware Supreme Court, ordered the sale of Plaintiff TransPerfect Global, Inc. ("TPG"), a Delaware corporation ("Sale Order").  TPG and its owner, Plaintiff Philip Shawe, bring this action against the presiding judge, the Honorable Andre G. Bouchard, Chancellor of the Court of Chancery of the State of Delaware.  The court-ordered sale was prompted by a vitriolic dispute between TPG's then-primary owners, Elizabeth Elting, who petitioned for the sale, and Mr. Shawe, who opposed it.  In March 2015, pursuant to 8 *Del. C.* § 226, the Court of Chancery appointed attorney Robert Pincus as Custodian to oversee and facilitate the sale.  Through that process, Mr. Shawe ultimately acquired Ms. Elting's 50% interest in TPG and now owns 99% of TPG.[1]  Plaintiffs now challenge the Court of Chancery's orders in November 2019 that certain billing records of the Custodian should be filed under seal, even though Chancellor Bouchard lifted that requirement in January 2021.[2]  Plaintiffs argue that

---

[1] Mr. Shawe's mother owns the remaining 1% of TPG.  Am. Compl. ¶ 47.

[2] This case is the most recent in a number of lawsuits by Mr. Shawe and those closely aligned with him to attack collaterally the Delaware proceedings.  In June 2017, the Supreme Court of New York dismissed a suit by Mr. Shawe that "represent[s] some of Shawe's most recent collateral challenges to the loss he suffered in Delaware."  *Shawe v. Elting*, 2017 WL 2813060, at *1 (N.Y. Sup. Ct., N.Y. Cty. June 29, 2017). The court cautioned Mr. Shawe that "given the borderline frivolity of these lawsuits, . . . the maintenance of future suits in this court that are barred by the outcome of the Delaware action may result in sanctions and a filing injunction. It is time for this saga to end." *Id.* at *14. A few months later, the U.S. District Court for the Southern District of New York dismissed on *Younger* abstention grounds a suit brought by a TPG employee who reported to Mr. Shawe challenging certain actions by Mr. Pincus as unconstitutional. *See Holland v. Bouchard*, 2017 WL 4180019, at *3-4 (S.D.N.Y. Sept. 19, 2017). A week later, the U.S. District Court for the District of Delaware dismissed a suit by Mr.

those orders infringed their constitutional rights, and request a declaration that they are not required to pay the Custodian's fee petitions submitted while the orders were in effect.

Even before the Court rescinded the confidentiality restrictions in the November 2019 orders, more than a dozen of Plaintiffs' representatives agreed to keep the records confidential, reviewed them, and filed voluminous objections to the Custodian's fee requests. Mr. Shawe and TPG's general counsel's refusal to agree to the confidentiality restrictions was gamesmanship and does not offend the Constitution. At bottom, this lawsuit attempts to use federal authority to challenge the Court of Chancery's procedures regarding the handling of confidential information during litigation—exactly what *Younger* abstention was intended to prevent. If Plaintiffs can challenge the Court of Chancery's procedures here, then every confidentiality provision in every state court is reviewable in federal court—an obvious affront to state courts' ability to enforce their own orders. Moreover, if Plaintiffs do not prevail in the Court of Chancery, they may raise their constitutional arguments on appeal to the Delaware Supreme Court. This suit is an impermissible attempt to sidestep Delaware's judicial system and should not be countenanced.

## <u>SUMMARY OF ARGUMENT</u>

The Amended Complaint should be dismissed for several independent reasons.

1. The Court lacks subject matter jurisdiction over Plaintiffs' claims because they are moot. On January 13, 2021, the Court of Chancery issued an order removing all confidentiality protections over all of the Custodian's billing records at issue in this case, such that Plaintiffs are not limited in any way in their ability to disclose or discuss them publicly. Ex. 1 (Jan. 13, 2021

---

Shawe against Mr. Pincus alleging that the sale of TPG was an unconstitutional taking, holding that the *Rooker-Feldman* doctrine prevents federal courts from hearing suits "that are essentially appeals from state-court judgments." *See Shawe v. Pincus*, 265 F. Supp. 3d 480, 485 (D. Del. 2017). In September 2017, Mr. Shawe again sued Mr. Pincus, this time in federal court in New York, alleging that, as Custodian, he had violated Mr. Shawe's constitutional rights. *Shawe v. Pincus*, Case No. 17-6673 (S.D.N.Y.). Mr. Shawe dropped that suit in 2018.

Order).  Because there is no longer any live controversy or dispute that warrants the continued pursuit of Plaintiffs' federal claims, the case should be dismissed.

2.   The Amended Complaint should be dismissed under the *Younger* abstention doctrine, which requires federal courts to decline jurisdiction when a federal action would interfere with ongoing state court proceedings.  In an earlier lawsuit by a TPG employee against Chancellor Bouchard challenging aspects of the Sale Order, the U.S. District Court for the Southern District of New York held that *Younger* abstention applied because the "Court of Chancery has a strong interest in enforcing its orders relating to the governance and management of Delaware corporations." *Holland*, 2017 WL 4180019, at *3-4.  The same analysis applies here.

3.   Plaintiffs' allegations fail to state a claim.  No plausible argument exists that the Court of Chancery's orders violate the First Amendment or constitute a deprivation of due process.  Confidentiality orders, like the one here, do not offend the First Amendment, and Mr. Shawe's alleged history of harassment using billing records justified the restrictions when they were imposed.  *See generally Shawe v. Potter Anderson & Corroon LLP*, 2017 WL 6397342 (D. Del. Dec. 8, 2017); Section III.A *infra*.  Moreover, the Court of Chancery has afforded Plaintiffs ample opportunity to object to the Custodian's fee petitions, and any rulings on those petitions can be appealed, easily satisfying constitutional requirements of due process.

## STATEMENT OF FACTS

This case concerns the Delaware state courts' handling of litigation and custodianship proceedings about TPG, a Delaware corporation.[3]  Am. Compl. ¶ 1.  TPG provides translation and litigation support services from over 100 offices worldwide.  *Id*. ¶ 19.

---

[3] In August 2018, after the court-ordered sale closed, TPG reincorporated in Nevada. *In re TransPerfect Glob., Inc.*, 2019 WL 5260362, at *8 n.56 (Del. Ch. Oct. 17, 2019).

## A.    The Court of Chancery, Affirmed by the Delaware Supreme Court, Appoints a Custodian to Oversee a Judicially Ordered Sale of TPG.

In May 2014, Ms. Elting petitioned the Court of Chancery to appoint a custodian to sell

TPG due to the "serious dysfunction" of management.  *Shawe v. Elting*, 157 A.3d 152, 155 (Del.

2017).[4]  Section 226(a) of the Delaware General Corporation Law provides for appointment of a

custodian when corporate deadlock threatens the business of the corporation with irreparable

injury.  *See* 8 *Del. C.* § 226(a).  After a trial, the Court of Chancery issued a lengthy opinion

finding that the conditions of Section 226 were satisfied.  *Elting v. Shawe*, 2015 WL 4874733

(Del. Ch. Aug. 13, 2015).[5]  As permitted by Delaware law, the Court of Chancery appointed Mr.

Pincus—an attorney in the Wilmington office of Skadden Arps Slate Meagher & Flom LLP who

had no previous connection to TPG—as an independent custodian to oversee a judicially ordered

sale of the company and, in the interim, to serve as a third director.  *Id.*; Am. Compl. ¶¶ 17, 27.

The court directed the Custodian to present a proposed plan to sell "the Company with a view

toward maintaining the business as a going concern and maximizing value for the stockholders."

Am. Compl. ¶ 27.  At the same time, the court set forth the initial procedure for payment of the

Custodian's fees.  *In re TransPerfect Glob., Inc.*, 2015 WL 4778615, at *1 (Del. Ch. Aug. 13,

2015) ("The Custodian shall be compensated at the usual hourly rate he charges as a partner of

---

[4] This Court may take judicial notice of Delaware state court filings. *See Southmark Prime Plus, L.P. v. Falzone*, 776 F. Supp. 888, 892 (D. Del. 1991). The Amended Complaint also bases claims on and incorporates by reference the November 2019 Orders, described below, so they are properly considered here. *See Winer Family Tr. v. Queen*, 503 F.3d 319, 328–29 (3d Cir. 2007).
[5] Indeed, the evidence revealed a dispute of unbounded rancor. Mr. Shawe and Ms. Elting had planned to marry in the 1990s, but she called off the engagement, leading to a long campaign to "terrorize" her. *Id.* at *2–3. Mr. Shawe threatened to shutter the company, freeze payroll and bank accounts, and fire critical employees; started a physical confrontation by preventing Ms. Elting from closing her office door, then pressed assault charges and filed a tort claim; intercepted and reviewed her mail; snuck into her office at night to copy her hard drive and read her emails; stole private communications with her attorneys; and stalked and harassed her by booking a flight to Paris in the seat across the aisle from her. *Id.* at *5–23. The Delaware Supreme Court described his conduct as "reprehensible." *Shawe*, 157 A.3d at 167 n.55.

Skadden. . . . [and] shall petition the Court . . . for approval of fees and expenses.").

The Court of Chancery also found that Mr. Shawe had engaged in "unusually deplorable" litigation misconduct by seeking to destroy evidence from his laptop, failing to preserve evidence, improperly obtaining from Ms. Elting's computer 12,000 privileged communications with her counsel, and repeatedly lying under oath to conceal his wrongdoing. *See Shawe v. Elting*, 157 A.3d 142, 145 (Del. 2017) (en banc). The court imposed sanctions of more than $7.1 million—the attorney's fees incurred by Ms. Elting due to his misconduct. *Id*. at 144.

The Delaware Supreme Court affirmed both of these decisions on appeal. It ruled that appointing a custodian to sell the company was measured, reasonable, and permitted by statute, and held unanimously that there was a "clear record of egregious misconduct and repeated falsehoods [by Mr. Shawe] during the litigation," Mr. Shawe's "behavior was 'unusually deplorable,' and thus the Court of Chancery acted well within its discretion by sanctioning him [$7.1 million] for his bad faith conduct." *Id.* at 145, 152, 160–62.

In November 2017, after an extensive sale process, an entity owned by Mr. Shawe purchased Ms. Elting's 50% interest in TPG for approximately $385 million. *In re TransPerfect Glob., Inc.*, 2018 WL 904160, at *1-2, 12 (Del. Ch. Feb. 15, 2018). On February 15, 2018, the Court of Chancery approved the sale, and, in May 2018, the Delaware Supreme Court affirmed, noting that "[t]he Chancellor rose above the unjustified personal attacks on his integrity, and patiently and thoroughly addressed each issue raised in this bitter dispute . . . ." *Elting v. Shawe*, 185 A.3d 694 (Del. 2018).[6] The sale closed four days later. Am. Compl. ¶ 47.

---

[6] The Sale Order further provided that the Court of Chancery "retains continuing and exclusive jurisdiction over the parties to the Actions [i.e., the sale proceedings] for all matters relating to the Actions, including . . . and all orders of the Court in [the case]." *See In re TransPerfect Glob., Inc.*, 2019 WL 5260362, at *5.

**B.**      **The Post-Closing Fee Petitions, November 2019 Orders, and Tactical Decisions by Plaintiffs.**

After the closing, the Custodian continued to perform services and incur fees. The Custodian incurred many of those fees by responding to lawsuits filed by or against Plaintiffs in connection with the sale. *In re TransPerfect Glob., Inc.*, 2019 WL 5260362 at *6. In June and July of 2019, the Custodian filed petitions seeking court approval of approximately $65,000 in fees and expenses related primarily to those lawsuits. *Id*. at *7. The court approved payment without objection from Plaintiffs. *Id*.

In August 2019, however, TPG sued the Custodian in Nevada state court (where TPG reincorporated in 2018), objecting to payment of the $65,000 in fees and requesting a declaration that it had no duty to indemnify him. *Id*. at *8. Separately, on September 24, 2019, Plaintiffs moved in the Court of Chancery for an order compelling the Custodian to produce all bills and time sheets supporting all fee applications since May 2019. *See* Ex. 2, ¶ 8 (Second Order). On October 17, 2019, upon the Custodian's motion, the court held Plaintiffs in contempt of the Sale Order because the Nevada lawsuit violated that Order's exclusive jurisdiction provision. *See In re TransPerfect Glob., Inc.*, 2019 WL 5260362, at *10-15. In a related hearing, the Court also stated it was "sympathetic to some of the practical concerns" raised by TPG regarding the fee petitions and wished to clarify the requirements governing them. *See* Ex. 3 (Tr.) at 7-9.

Accordingly, on November 1, 2019—after briefing, and over the Custodian's objection—the court issued the Second Order Concerning Custodian's Motion for Civil Contempt and Sanctions ("Second Order") and the Records Confidentiality Order (collectively, the "November 2019 Orders"), which directed the Custodian to include billing records along with his fee petitions, subject to the confidentiality restrictions at issue here. *See* Ex. 2 (Second Order); Am. Compl. Ex. A (Records Confidentiality Order). Specifically, the Second Order required the

6

Custodian to attach "[a]s an exhibit to any fee petition submitted to the Court . . . an invoice, billing record or other document" detailing support for the fees ("Billing Records"), but directed that such Billing Records be "filed confidentially with the Court in connection with filing the fee petition." Second Order ¶¶ 3(a)-(b).[7] The Second Order also required Plaintiffs to file any objections to the Custodian's fee petitions within ten business days and set a procedural process to resolve fee disputes. *Id.* ¶¶ 3(c)-(e). At the same time, the court issued the Records Confidentiality Order, which required that to access the Billing Records, a party must execute an undertaking agreeing to be bound by the Records Confidentiality Order (the "Undertaking"). Records Confidentiality Order ¶ 5.[8] In issuing these rulings, the Court considered Mr. Shawe's record of serious misconduct, including allegations that previous leaks of billing information to an organization associated with him resulted in a harassing media campaign undertaken in an apparent effort to intimidate the Custodian and affect the sale process. *See* Ex. 4, ¶¶ 21-22.

Multiple lawyers and an expert for Plaintiffs subsequently executed the Undertaking and gained access to all Billing Records. Am. Compl. ¶ 101. For tactical reasons, Mr. Shawe and TPG's general counsel declined to do so. *Id.* ¶ 82. The Custodian submitted several fee petitions pursuant to the procedures in the November 2019 Orders. *See, e.g., id.* ¶¶ 102, 112. Plaintiffs objected, submitting "74 pages of briefing, an expert report, and a rebuttal expert declaration" in opposition to the Custodian's 2019 fee petitions.[9] Ex. 5 (Jan. 15, 2021 Order); Exs. 15-16 (Plaintiffs' objections).

---

[7] In light of allegations of Mr. Shawe's past litigation misconduct, the Court of Chancery directed that individual attorneys be identified as "Timekeeper A," "Timekeeper B," etc., rather than by their actual names. Second Order ¶ 3(a).

[8] As set forth in the Second Order, the fee petitions themselves were to be filed publicly; only the supporting Billing Records were to be filed under seal. Second Order ¶¶ 3(a)-(b).

[9] The Custodian's fee petitions that are currently pending before the Court of Chancery include those submitted in June-September 2019, November 2019, December 2020, and January 2021.

### C.      Plaintiffs' Appeals to the Delaware Supreme Court.

Plaintiffs requested certification of the November 2019 Orders for interlocutory appeal.
The court denied the request, explaining that it made more sense to resolve challenges to those
Orders at the same time as any objections to the Custodian's fee petitions, which remained
pending.  *See In re TransPerfect Glob., Inc.*, 2019 WL 6358786, at *1 (Del. Ch. Nov. 27, 2019).

At the same time, Plaintiffs noticed an appeal of the November 2019 Orders to the
Delaware Supreme Court.  *See TransPerfect Glob., Inc. v. Pincus*, 224 A.3d 203 (Del. 2019).
Plaintiffs' appeal raised the same concerns about purported constitutional violations that they
allege here.  *See* Ex. 6, at 12 (Appellants' Resp. to Notice to Show Cause); Am. Compl. ¶ 98.
The Supreme Court rejected Plaintiffs' appeal, concluding "that the orders do not fall within the
collateral order doctrine," as they were "not final and do not have a substantial, continuing effect
on important rights."  *TransPerfect Glob., Inc.*, 224 A.3d 203 at *2.  The Supreme Court
recognized that "[t]he Second Order merely sets a procedural process for resolution of fee
disputes."  *Id*. at *3.  Further, the Supreme Court agreed with the Court of Chancery's reasoning
that "it would be most efficient to resolve the amount of the contempt fee award as well as the
objections to the Fee Orders and then to certify a single interlocutory appeal."  *Id*.

### D.      Recent Proceedings in the Court of Chancery.

In November 2020, Chancellor Bouchard determined that "the time ha[d] come to set
firm deadlines to bring the Custodianship to a prompt conclusion," and set a hearing date for
pending motions.  Ex. 7 (Nov. 30, 2020 Ltr.).  On December 15, 2020, the Custodian moved to
be discharged and filed a petition for all fees incurred between November 2019 and November
2020.  Am. Compl. ¶ 112.  He filed a further petition for fees on January 8, 2021.  Once again,
Plaintiffs filed voluminous objections, including 73 pages of briefing, as well as hundreds of
pages of expert analysis.  *See* Exs. 8-9 (Plaintiffs' objections).  The court scheduled a hearing on

the petitions for March 2, 2021.  *See* Ex. 10 (Jan. 21, 2021 Order).

On January 7, 2021, after Plaintiffs filed their initial Complaint in this case, the Court of Chancery asked for the Custodian's position "as to whether a basis exists to maintain under seal" the small number of Billing Records that remained under seal given the upcoming hearing on the fee petitions and the Court's October 2020 Orders, which had unsealed all documents in the case except for certain Billing Records subject to the November 2019 Orders.  Ex. 11, at 1; Am. Compl. ¶ 117; Ex. 1, at 2.  On January 13, 2021, after receiving the Custodian's response, the Court of Chancery unsealed the Billing Records.  Ex. 1; Am. Compl. ¶ 119.  Specifically, the Court directed that (i) all of the Billing Records at issue here be unsealed, (ii) the Records Confidentiality Order "is rescinded and shall have no further force or effect [except for its exclusive jurisdiction provision]," and (iii) "paragraph 3(b) of the Second Order [which sets forth the confidentiality restrictions] is rescinded and shall have no further force or effect."  Ex. 1.The January 13 Order further stated:  "For the avoidance of doubt, as a result of this order (a) any future fee petitions of the Custodian and/or his counsel and any Billing Records filed with the Court shall not be filed under seal, (b) any undertakings that were entered into pursuant to Section 3(b) of the Second Order or the Records Confidentiality Order shall have no further force or effect, and (c) the Custodian's redaction of information under paragraph 3(a) of the Second Order must comply with the standards set forth in [the Delaware court rules]."  *Id*. ¶ 4. As a result, the Billing Records at issue have been unsealed, and no party is under any obligation to keep them confidential.  Am. Compl. ¶ 119 (confirming billing records were unsealed).

### E.   Plaintiffs File This Federal Action.

On February 9, 2021, Plaintiffs filed their Amended Complaint against Chancellor Bouchard in his official capacity.  Plaintiffs object to the November 2019 Orders on constitutional grounds and seek declaratory relief under 42 U.S.C. § 1983, alleging that the

orders impose "unconstitutional conditions" and violate their rights under the First and Fourteenth Amendments.  Am. Compl. ¶ 1.

## DISCUSSION

### I.   THIS CASE SHOULD BE DISMISSED BECAUSE IT IS MOOT.

The Court lacks subject matter jurisdiction over the Amended Complaint because it is moot.  *See Mollett v. Leicth*, 511 F. App'x 172, 173 (3d Cir. 2013) (when a claim is moot, "a federal court lacks jurisdiction to hear it").  "The mootness doctrine is centrally concerned with the court's ability to grant effective relief: 'If developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot.'"  *Cnty. of Morris v. Nationalist Movement*, 273 F.3d 527, 533 (3d Cir. 2001).

There is no question that this case is moot.  The January 13, 2021 Order unsealed all of the Billing Records at issue here, rescinded the Records Confidentiality Order, ordered that Undertakings signed by Plaintiffs' representatives were of no further force and effect, and rescinded the portion of the Second Order sealing the Billing Records.  Ex. 1.[10]  This action followed the Court's orders unsealing all other documents in October 2020, and establishing deadlines to terminate the Custodianship.  *Id*. at 2.  As Plaintiffs affirmed to the Court of Chancery, the January 13, 2021 Order "eliminated altogether the confidentiality restrictions on the billing records submitted by the Custodian and Skadden."[11]  Ex. 12 ¶ 21 (Compl. in

---

[10] The Court may consider this Order and other filings in the underlying Delaware proceedings to determine whether a controversy exists sufficient to afford federal jurisdiction. *See U.S. ex rel. Customs Fraud Investigations, LLC v. Victaulic Co*., 839 F.3d 242, 251 (3d Cir. 2016) ("When a Rule 12(b)(1) motion is evaluated as a 'factual attack' on the Court's subject matter jurisdiction, 'the court may consider evidence outside the pleadings' in evaluating that attack.").
[11] TPG made this statement in yet another lawsuit related to the sale process—this time against attorneys at Ross Aronstam & Moritz, LLP ("Ross"), a Delaware law firm the Custodian hired in

*TransPerfect Glob., Inc. v. Ross, Aronstam & Moritz, LLP*).  Plaintiffs are no longer under any confidentiality obligations with respect to any filings, including the Billing Records; they have full access to those records; and the Custodianship is at the verge of concluding.

These rulings render moot all of the relief Plaintiffs seek in their Amended Complaint. Specifically, the Amended Complaint requests a declaration that (i) the confidentiality provisions in the November 2019 Orders are unconstitutional because they impose restrictions on Plaintiffs' ability to disclose and discuss information relating to the Billing Records, and (ii) it is unconstitutional to require Plaintiffs to pay the Custodian's fees in such circumstances.  *See* Am. Compl. 43-44.  Because the Court of Chancery has removed confidentiality restrictions on the Billing Records, Plaintiffs have effectively received all of the relief they request in this lawsuit.

The Amended Complaint attempts to get around these facts by complaining that an exceedingly small amount of privileged or sensitive information remains redacted from the Billing Records—effectively seeking review of an interlocutory order applying a local court rule.[12]  *See* Am. Compl. ¶¶ 2-3.  Plaintiffs, however, do not allege that such redactions are inconsistent with the applicable court rule.  *See* Del. Ch. R. 5.1 (explaining that "sensitive proprietary information" and "sensitive financial, business, or personnel information," among other things, may be redacted for good cause).  Nor do they, or can they, plausibly allege that the remaining redactions impair constitutional rights.  The redactions have no effect whatsoever on Plaintiffs' ability to speak publicly about the bills—which is the only constitutional basis that

---

2017 to represent TPG in two suits Mr. Shawe's mother filed against TPG during the sale process.  In August 2020, TPG sued Ross in New York state court alleging it breached a duty owed to TPG because it took direction from the Custodian.  *See* Ex. 12.  In December 2020, after intervening in the Court of Chancery action, Ross filed a motion for contempt against TPG for, among other things, violating the exclusive jurisdiction provision in the Sale Order.  *See* Ex. 13 (Mot. to Enforce the Orders of the Court). Ross's contempt motion is under submission.
[12]  Of more than 1,500 time entries, only fourteen contain redactions.  *See* Ex. 14.

could be asserted here—and they do not allege that the redactions interfered with their responses to the fee requests.  *See* § III.B *infra* (describing Plaintiffs' extensive objections).

The Amended Complaint also posits, with desperation, that Plaintiffs suffer continued harm because the Court of Chancery: (i) denied their request to supplement their objections to the 2019 fee petitions, which were made while the November 2019 Orders remained in effect; and (ii) might force them to pay the Custodian's fees incurred in "seeking, obtaining, and defending" the allegedly unconstitutional Orders.  Am. Compl. ¶¶ 4-5, 123, 125-29.  Plaintiffs, however, will be free to make any arguments they see fit concerning the fee petitions during the March 2 hearing, and they fail to allege how the allegedly unconstitutional Orders prevented their teams of lawyers (including counsel of record) and expert—who signed the Undertaking and thus had access to the records—from preparing adequate objections.  There are, in fact, many protective orders that restrict access to information to "counsel's eyes only," and that does not elevate them to constitutional violations.  The decision of Shawe and his general counsel not to sign the confidentiality agreement and thus not to obtain access to the information was their choice, and a tactical one, which did not affect substantial rights.  In addition, speculating about what the Court of Chancery might or might not do after the hearing does not allege a justiciable controversy.  *See Constand v. Cosby*, 833 F.3d 405, 409 (3d Cir. 2016) ("[M]ere speculation 'afford[s] no basis for finding the existence of a continuing controversy as required by Article III.'").  Plaintiffs argue that "[a] favorable decision from this Court would force [the Court of Chancery] to reevaluate [its] determination [concerning the appropriateness of the November 2019 Orders] and provide Plaintiffs a meaningful opportunity to petition the state court for [relief]," Am. Compl. ¶ 129, but this effectively asks the Court to grant an advisory opinion, which it may not do.  *See Constand*, 833 F.3d at 411 (rejecting argument that decision would

"provide a basis to make an argument to other courts" as seeking an impermissible "advisory opinion"); *In re Cantwell*, 639 F.2d 1050, 1054 (3d Cir. 1981) (rejecting argument that decision would provide appellants a "firm basis" on which to return to a lower court and request relief on the same basis). The bottom line remains that there is no longer any live dispute, and the Amended Complaint must be dismissed as moot. If Plaintiffs do not prevail in the Court of Chancery as the pending proceeding draws to a conclusion, they can raise their claims on appeal.

## II.     THE COURT SHOULD ABSTAIN FROM EXERCISING JURISDICTION.

Even if this case were not moot, the Court should abstain from exercising jurisdiction under the *Younger* abstention doctrine, which advances the strong federal policy against interfering with pending state court proceedings absent extraordinary circumstances. *See Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982) (citing *Younger v. Harris*, 401 U.S. 37 (1971)). Principles of comity require federal courts to show "a proper respect for state functions" and to recognize "that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Younger*, 401 U.S. at 44. Abstention thus recognizes that there are "certain instances in which the prospect of undue interference with state proceedings counsels against federal relief." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013). Repeatedly suing a Chancellor presiding over state proceedings to overrule his judgments regarding the application of a Chancery Court rule governing the appropriate handling of billing records, and to direct whether or not a custodian's fees should be paid, would unduly interfere with ongoing state proceedings. Abstention is thus the proper course here.

In *Sprint*, the Supreme Court clarified that *Younger* abstention applies when a federal court is asked to intervene in: (i) "ongoing state criminal prosecutions," (ii) certain "civil enforcement proceedings," or (iii) "civil proceedings involving certain orders uniquely in

furtherance of the state courts' ability to perform their judicial functions." 571 U.S. at 78

(cleaned up); *PDX N., Inc. v. Comm'r N.J. DOL & Workforce Dev.*, 978 F.3d 871, 882 (3d Cir.

2020). When a parallel state proceeding falls into one of these three categories, a federal court is

"obligated to abstain" when (1) there "are ongoing judicial proceedings" which (2) "implicate

important state interests"; and (3) there is "an adequate opportunity in the state proceeding to

raise constitutional challenges" (the *Middlesex* factors). *See* <u>Hamilton v. Bromley</u>, 862 F.3d 329,

332 (3d Cir. 2017); *PDX N. Inc.*, 978 F.3d at 883. All of these conditions are satisfied.

First, this case falls squarely within the third *Sprint* category outlined above—an order

"uniquely in furtherance of the state courts' ability to perform their judicial functions." In

*Sprint*, the Court defined this category with reference to *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1

(1987), where the Supreme Court held that cases (like this one) that challenge state court orders

based on an alleged violation of federal constitutional rights may trigger *Younger* abstention.

*See Pennzoil*, 481 U.S. at 6, 13–14 (*Younger* abstention where federal suit "involve[d] challenges

to the processes by which the State compels compliance with the judgments of its courts"); *Silver

v. Court of Common Pleas*, 802 F. App'x 55, 58 (3d Cir. 2020) (*Younger* abstention in suit

challenging state court gag order "govern[ing] the post-judgment conduct of attorneys and

litigants"). Applying this precedent, in *Port Authority Police Benevolent Ass'n v. Port Authority

Police Department*, 973 F.2d 169 (3d Cir. 1992), the Third Circuit affirmed dismissal of a

complaint seeking to enjoin on First Amendment grounds a New York state court's order

enjoining the plaintiff from soliciting certain contributions. *Id*. at 171. The Third Circuit

reasoned that "a federal injunction [as sought by plaintiffs] would render the [state court]

injunction . . . ineffectual and would thus impinge on New York's important interest in

preserving its courts' power to enforce their orders." *Id*. at 174.

14

The same analysis applies here.  The November 2019 Orders directly implicate the way Delaware courts implement and enforce orders relating to the governance and management of Delaware corporations, which is a "vital concern" for Delaware given its status as the leading jurisdiction in the nation for matters of corporate law.  Indeed, in *Holland*, the U.S. District Court for the Southern District of New York held that the same Delaware proceedings at issue here fall within the third *Sprint* category—"civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions"—and abstained on *Younger* grounds.  2017 WL 4180019, at *3.  "Abstention is appropriate . . . because the Delaware Court of Chancery has a strong interest in enforcing its orders relating to the governance and management of Delaware corporations," and the plaintiff's challenge "relate[s] to the ability of the Delaware Court of Chancery to enforce the [Sale] Order, as well as the ability of Pincus to fulfill his duties as custodian and carry out the sale," thus "implicat[ing] Delaware's ability to govern and manage corporations."  *Id.*

The Delaware proceedings also satisfy the other *Younger* abstention factors.  First, the proceedings are ongoing.  Second, the matter implicates important state interests, including the governance and management of corporations generally, the custodianship and sale of deadlocked corporations, and the uniform development and interpretation of the state's statutory scheme regarding corporations.  *See id.* at *3 ("[T]he Delaware Court of Chancery has a strong interest in enforcing its orders relating to the governance and management of Delaware corporations."); *In re English Seafood Inc.*, 743 F. Supp. 281, 289 (D. Del. 1990) (recognizing importance of these state interests in the abstention context).  Third, there can be no dispute that Delaware courts are able to adjudicate Plaintiffs' constitutional claims.  "[S]tate and federal courts are equally competent in evaluating federal constitutional claims."  *Sixth Angel Shepherd Rescue, Inc. v. Schiliro*, 596 F. App'x 175, 177 (3d Cir. 2015).  "The burden on this point rests on the federal plaintiff to show

that state procedural law barred presentation of its claims," *Pennzoil*, 481 U.S. at 14 (cleaned

up), and the "requirement . . . [is] only that there be *no inherent bar to* the raising of the federal

issue in the state courts," *Port Auth. Police Benevolent Ass'n*, 973 F.2d at 174 (emphasis added).

Plaintiffs face no "inherent bar" here.  Indeed, in denying Plaintiffs' request to take an immediate

appeal of the November 2019 Orders, the Delaware Supreme Court noted the likelihood of an

upcoming appeal addressing all of Plaintiffs' challenges to the fee petitions at the same time.

*TransPerfect Glob., Inc.*, 224 A.3d 203 at *3.

### III.    PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(B)(6).

The Amended Complaint also must be dismissed under Rule 12(b)(6) of the Federal

Rules of Civil Procedure because its allegations do not plausibly establish the threshold element

of a § 1983 claim—a constitutional violation.  *See Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir.

2000) ("The first step in evaluating a section 1983 claim is to . . . determine 'whether the

plaintiff has alleged a deprivation of a constitutional right at all.'").

### A.    Plaintiffs Fail to State a First Amendment Claim (Count 1).

Plaintiffs do not plausibly state a First Amendment violation.  They assert that the

November 2019 Orders violate their rights "to see and review the billing detail supporting any

fee petitions filed by the Court-appointed Custodian . . . and to be heard on any objections to

those fee petitions and billing records . . . ."  Am. Compl. ¶ 138.  They argue incorrectly that by

requiring the parties to sign the Undertaking—prohibiting "any public comment about or

disclosure of the Custodian's billing information"—before viewing the Billing Records, the

Court of Chancery violated their First Amendment rights "publicly to disclose, speak about,

comment upon, or criticize the Custodian's and Skadden's fees."  *Id.* ¶¶ 141, 145.  The United

States Supreme Court, however, has made clear that "a protective order . . . entered on a showing

of good cause as required by Rule 26(c) . . . [in] the context of pretrial civil discovery . . . does

not offend the First Amendment." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984); *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1119 (3d Cir. 1986) (same).  This is so because, among other things, "[a] litigant has no First Amendment right of access to information made available only for purposes of trying his suit."  *Seattle Times Co.*, 467 U.S. at 32.  Indeed, the Third Circuit has emphasized that the "first amendment is simply irrelevant to protective orders in civil discovery."  *Cipollone*, 785 F.2d at 1119.  The court must only "inquire whether the defendants had demonstrated good cause for the protective order," *see id.*, which the Court of Chancery unquestionably did here.  *See* Ex. 2 ¶ 3(b) (finding "good cause"); Ex. 3, at 12.

The fact that the records were filed in court does not change the First Amendment calculus.  Not all judicial records are entitled to First Amendment protection.  The Supreme Court has recognized a constitutional right of public access to criminal cases, *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 603 (1982), and the Third Circuit has recognized the public's right of access to civil trials, *Publicker Indus. v. Cohen*, 733 F.2d 1059, 1061 (3d Cir. 1984).  But Plaintiffs cite no authority recognizing a First Amendment right regarding the documents here: billing records in custodianship proceedings.  Indeed, the Third Circuit recently suggested the constitutional bar is at a far higher level, opining "[i]t remains an open question in this Circuit whether the First Amendment right of access applies to records *of summary judgment proceedings*," which directly implicate judicial decisions on the merits.  *In re Avandia Mktg., Sales Prac. & Prods. Liab. Litig.*, 924 F.3d 662, 673 (3d Cir. 2019) (emphasis supplied).  A fortiori it would not extend to a limited number of Billing Records supporting the Custodian's post-sale fee petitions.  They have not been admitted into evidence and do not go to the merits of the underlying dispute.  Plaintiffs present no reason to extend First Amendment protection to such filings.  *See N. Jersey Media Grp. v. U.S.*, 836 F.3d 421, 430-34 (3d Cir. 2016) (right of

access did not extend to sealed letter identifying alleged co-conspirators in criminal case).

Moreover, the Supreme Court has held that the common law right of access to judicial records "is not absolute." *Nixon v. Warner Commc'ns*, 435 U.S. 589, 598 (1978); *see Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 344 (3d Cir. 1986) (recognizing same). The Court has recognized that "[e]very court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *Nixon*, 435 U.S. at 598. Indeed, the Supreme Court emphasized that "the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Id.*

Here, the Court of Chancery acted well within its discretion in requiring confidential treatment, particularly given the reported opinions detailing Mr. Shawe's litigation history, including misuse of billing records. *See supra* §§ A, B. For example, after Mr. Shawe obtained billing records from Ms. Elting's counsel—whose fees he had to pay as a sanction—he brought suit against her counsel in this Court for allegedly misrepresenting their fees. *See Shawe v. Potter Anderson & Corroon LLP*, 2017 WL 6397342 (D. Del. Dec. 8, 2017). Judge John Jones, sitting by designation, dismissed the complaint and sanctioned Mr. Shawe, holding that his purpose was to "harass the Defendants and to abuse the court system," and recognizing that "Shawe's repeated attempt to re-litigate issues that have been conclusively decided and affirmed in the Delaware courts is the very abuse that Rule 11 seeks to deter." *Id*. at *4. The Court stated: "[W]e express our opinion that any future court plagued by subsequent frivolous lawsuits brought by Shawe to collaterally attack the Delaware rulings should very seriously consider imposing an injunction to put a final end to this behavior." *Id*. at *5. Given this history, among other conduct by Mr. Shawe that has been harshly criticized by federal and state jurists, the Court

18

of Chancery is best able to assess "the relevant facts and circumstances of the . . . case," and properly exercised discretion in limiting Mr. Shawe's ability, at least temporarily, to use the records for purposes outside the custodianship proceedings. *See Nixon*, 435 U.S. at 599.

**B.      Plaintiffs Fail to State a Due Process Claim (Count 2).**

Plaintiffs' due process claim fares no better.  Plaintiffs assert that the November 2019 Orders "constitute[] an unconstitutional deprivation of Plaintiffs' due process rights, because Plaintiffs lose their constitutional right of access, review and opportunity to be heard on the billing information, unless they surrender their constitutional right to publicly criticize, comment upon and disclose that information."  Am. Compl. ¶ 153.  This claim turns on Plaintiffs' ability plausibly to assert that the First Amendment extends to Billing Records—which they cannot do. *See supra* § III.A.  There was no constitutional deprivation in placing Billing Records under seal, *see id.*, and therefore no unconstitutional impediment to objecting to the fee petitions.

Moreover, nothing prevented Plaintiffs from reviewing the records and objecting, so long as they agreed not to disclose the information publicly.  Over a dozen representatives of Plaintiffs so agreed and reviewed the records, filing voluminous objections; the tactical decision of Mr. Shawe and his general counsel to refuse to sign did not, as the record shows, impact Plaintiffs' ability to object.  Plaintiffs "submitted 74 pages of briefing, an expert report, a rebuttal expert declaration, and made every conceivable argument in opposition to [the Custodian's 2019 fee petitions], which concern[] approximately $240,000 of fees and expenses."  Ex. 5 (Jan. 15, 2021 Order).  And after the January 13 Order removed all confidentiality restrictions, Plaintiffs submitted an additional 73 pages of briefing, as well as hundreds of pages of expert analysis, in objecting to the Custodian's December 2020 and January 2021 fee petitions.  *See* Exs. 8-9 (Plaintiffs' objections).  A hearing on all of those petitions is scheduled for March 2, 2021.

Plaintiffs complain they did not have an opportunity to "supplement their objections" to

the 2019 fee petitions, Am. Compl. ¶ 4, but they will be free to make any argument they see fit during the March 2 hearing, which is more than sufficient to pass constitutional muster. *See, e.g., Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) ("'[T]he root requirement' of the Due Process Clause [is] 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest.'"); *Wilson v. MVM, Inc.*, 475 F.3d 166, 178 (3d Cir. 2007) ("At a minimum, due process requires notice and a hearing."). Mr. Shawe and TPG's general counsel made a tactical decision *not* to sign the Undertaking while their extensive legal and expert team did; this does not amount to a constitutional violation.

Finally, it bears emphasizing that the fee petitions to which Plaintiffs have objected are *still pending* before the Court of Chancery. Am. Compl. ¶ 4. If the court grants the petitions in whole or in part, Plaintiffs will be free to appeal to the Delaware Supreme Court and raise their constitutional arguments there. *See supra* § I. The law is clear that "[i]n order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate," and "[i]f there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000); *see also Zinermon v. Burch*, 494 U.S. 113, 126 (1990) ("The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process."). Plaintiffs cannot allege that appellate review in Delaware state courts is unavailable or inadequate. Their due process claim represents an impermissible attempt to bypass adequate remedies available in Delaware, and thus should be dismissed as a matter of law.

## CONCLUSION

For these reasons, Plaintiffs' Amended Complaint should be dismissed with prejudice.

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

/s/ *Ryan T. Costa*
Ryan Costa, ID # 5325
Deputy Attorney General
Carvel State Bldg., 6th Fl.
820 N. French Street
Wilmington, DE  19801
Tel.: (302) 577-8400

John K. Villa (admitted *pro hac vice*)
William T. Burke (admitted *pro hac vice*)
Anne M. Rucker (admitted *pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Tel.: (202) 434-5000

*Attorneys for Defendant Andre G. Bouchard, Chancellor of the Court of Chancery for the State of Delaware*

21