**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **PHILIP R. SHAWE,** *et al.* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  20-1770** |
| | : | |
| **ANDRE G. BOUCHARD** | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                                     **April 12, 2021**

Our limited subject matter jurisdiction may allow us to declare a state court's confidentiality order violates the parties' First Amendment rights and Fourteenth Amendment due process rights in an ongoing shareholder litigation in the Delaware Court of Chancery. But our jurisdiction will not allow us to enter declaratory or injunctive relief concerning the constitutionality of a rescinded confidentiality order unable to presently affect the parties or absent a reasonable expectation the retiring Chancellor will re-implement the rescinded confidentiality restrictions.

We today address whether parties to an ongoing dispute regarding the veracity of fees the Chancellor may soon order them to pay to a court-appointed custodian under the Delaware General Corporation Law can state a claim within our limited jurisdiction for a declaratory judgment the Chancellor's confidentiality order over a custodian's billing records in place since November 1, 2019 violated the parties' First Amendment rights and Fourteenth Amendment right to due process. Our limited involvement arises from the parties filing this case on Christmas Eve 2020, one week after the custodian petitioned for additional fees and sealed his redacted billing records consistent with the Chancellor's November 1, 2019 confidentiality order.

We may face a ripe issue within our jurisdiction if the confidentiality order continues to affect the parties' rights.   But what happens to our jurisdiction after the Chancellor rescinds his

November 1, 2019 confidentiality order within three weeks of the parties filing this case? With the custodian's consent, the Chancellor's January 13, 2021 Order allowed public access to redacted billing records and specified future fee billing records cannot be filed under seal. The Chancellor subsequently afforded Mr. Shawe and TransPerfect more time to object to certain pending fee petitions. The Chancellor has not yet addressed the pending fee petitions. So you may ask: no harm, no foul? The answer is yes at least in federal court relating to the First Amendment claim; as a matter of declaratory or injunctive relief, the Chancellor's later order rescinding the challenged confidentiality order deprives us of subject matter jurisdiction as to requested relief seeking advisory opinions as to the whether the confidentiality order violates the parties' First Amendment rights.

The Chancellor's January 13, 2021 change of course mooted the pending declaratory judgment challenge under the First Amendment as there is no present imminent risk of depriving First Amendment rights nor is there a reasonable expectation of a restored confidentiality order from the soon-to-be retired Chancellor. But the change of course does not moot the request for a declaratory judgment the Chancellor's confidentiality order may continue to violate the Fourteenth Amendment's Due Process Clause given the pending fee petitions. But we cannot hear this claim either. We must abstain from reviewing the parties' due process concerns. They challenge the confidentiality order before us while these same arguments are before the Chancellor in an ongoing challenge involving core matters the Delaware General Assembly delegated to the Chancellor and eventually the Delaware Supreme Court under the Delaware General Corporation Law.

## I.     Alleged facts and public record.

Philip Shawe and Elizabeth Elting cofounded TransPerfect Global, Inc.[1] Mr. Shawe originally owned forty-nine percent of the company, Ms. Elting owned fifty percent, and Mr.

Shawe's mother owned the remaining one percent.[2] Mr. Shawe and Ms. Elting's relationship deteriorated after decades of success and growth.[3] Ms. Elting petitioned the Delaware Court of Chancery in 2014 to appoint a custodian under section 226 of the Delaware General Corporation Law to resolve alleged deadlocks among the directors and shareholders and force a sale of TransPerfect.[4]

### A.   Chancellor Bouchard grants Ms. Elting's Petition for a forced sale.

Chancellor Andre G. Bouchard presided over trial on Ms. Elting's section 226 petition consistent with the General Assembly's grant of authority. He granted Ms. Elting's petition on August 13, 2015.[5] He appointed Robert Pincus, Esquire – a partner at the Chancellor's former employer law firm Skadden, Arps, Slate, Meagher & Flom LLP – as the statutorily authorized custodian under section 226 of the Delaware General Corporation Law to oversee the forced sale of TransPerfect.[6] Chancellor Bouchard required Custodian Pincus account and bill fees at his usual hourly rates with reasonable travel and other expenses reviewed by the Chancellor on a monthly or other regular basis and promptly paid by TransPerfect.[7] Chancellor Bouchard allowed Custodian Pincus to retain counsel (including from his employer law firm) and advisors to assist him at their customary rates billed and paid promptly upon approval.[8] The Chancellor required Custodian Pincus file monthly progress reports under seal but did not specify monthly fee petitions also be filed under seal.[9] The Delaware Supreme Court affirmed Chancellor Bouchard's Order.[10]

### B.   Mr. Shawe owns ninety-nine percent of TransPerfect stock after a modified auction.

Custodian Pincus recommended the Court of Chancery conduct the forced sale through a "modified auction" open to any interested party including shareholders.[11] Mr. Shawe objected.[12] Chancellor Bouchard adopted Custodian Pincus's recommendation over Mr. Shawe's objections.[13] Chancellor Bouchard's Order approving the recommendation authorized Custodian Pincus to

execute and deliver a binding agreement on behalf of TransPerfect or any of its shareholders – Ms. Elting, Mr. Shawe, or Ms. Shawe – to complete the sale with the winning binder.[14] The Order further stated the court "shall approve" any such agreement Custodian Pincus entered into "unless the objecting party shows an abuse of discretion by the Custodian in connection with the sale process or the terms of the Agreements."[15]

Mr. Shawe's entity made the highest offer after multiple rounds of bidding.[16] Mr. Shawe, through his entity, purchased Ms. Elting's fifty percent ownership interest in TransPerfect through a Securities Purchase Agreement signed by Custodian Pincus (on behalf of TransPerfect and Ms. Elting), Mr. Shawe, and his mother.[17] The parties to the Securities Purchase Agreement created a $5 million escrow account, funded by Ms. Elting, Mr. Shawe, and Ms. Shawe *pro rata*, to pay for post-closing fees incurred by Custodian Pincus or his advisors.[18]

Custodian Pincus recommended the Chancery Court approve the executed Securities Purchase Agreement.[19] Ms. Elting objected to the recommendation.[20] Chancellor Bouchard accepted Custodian Pincus's recommendation over Ms. Elting's objections.[21] Chancellor Bouchard's Order approving the Securities Purchase Agreement vested exclusive jurisdiction in the Chancery Court for "all matters relating to the Actions, including…all orders of the Court."[22] The Delaware Supreme Court affirmed.[23] The transfer of Ms. Elting's shares to Mr. Shawe closed on May 7, 2018.[24] Mr. Shawe then became a ninety-nine percent owner of TransPerfect and its Chief Executive Officer.[25]

### C.  Chancellor Bouchard orders TransPerfect to pay approximately $44.5 million in fees and costs absent the Custodian's undisclosed billing records.

Custodian Pincus filed fee petitions throughout the sale process seeking payment for services provided by him, other professionals in his law firm, and others.[26] He did not attach billing records or other supporting documents.[27]

Chancellor Bouchard did not reduce the amount of money requested in Custodian Pincus's fee petition filed without supporting records.[28] Chancellor Bouchard did not reduce the requested fees.[29] Chancellor Bouchard ordered TransPerfect to pay approximately $44.5 million in undocumented fees and costs possibly representing services from appointment through the May 2018 transfer of shares.[30] Custodian Pincus sought almost $950,000 from the $5 million escrow account for post-closing work.[31]

Custodian Pincus then stated he would seek fees from TransPerfect directly – instead of from the agreed escrow – for work relating to two ancillary proceedings involving Mr. Shawe and TransPerfect.[32] He sought fees of approximately $225,000 for this ancillary work directly from TransPerfect.[33] TransPerfect objected and demanded to see Custodian Pincus's billing records supporting his fee petitions.[34] TransPerfect also sued Custodian Pincus in Nevada (TransPerfect's new state of incorporation) claiming, among other things, Custodian Pincus breached his fiduciary duty.[35]

### D.    Chancellor Bouchard's November 1, 2019 Orders require Custodian Pincus to file redacted billing records under seal with restrictions on TransPerfect's and Mr. Shawe's access.

Custodian Pincus responded to the Nevada filing by, among other things, moving the Court of Chancery to hold TransPerfect in contempt for 1) failing to pay fees sought directly from TransPerfect, and 2) filing the Nevada action in violation of an exclusive jurisdiction clause in the Securities Purchase Agreement and the Chancery Court's Order approving the agreement.[36] Chancellor Bouchard granted the motion in part, concluding TransPerfect's filing of the Nevada action violated his Order (affirmed by the Delaware Supreme Court) vesting exclusive jurisdiction in the Chancery Court.[37] Chancellor Bouchard enjoined TransPerfect, Mr. Shawe, and their representatives from taking any further actions in the Nevada lawsuit, imposed a $30,000 *per diem*

monetary sanction on TransPerfect and Mr. Shawe if they failed to dismiss the Nevada lawsuit by a certain date, and ordered TransPerfect and Mr. Shawe pay all fees and expenses incurred by Custodian Pincus in connection with the Nevada lawsuit and the contempt motion in the Chancery Court.[38] TransPerfect later dismissed the Nevada lawsuit.[39]

Chancellor Bouchard subsequently, by a telephonic ruling, denied the Custodian's motion for contempt as to TransPerfect's failure to pay fees, explaining he was "sympathetic to some of the practical concerns" with the fee petition process raised by TransPerfect in its briefing.[40] He explained he would implement changes to the process.[41] In a separate "Second Order Concerning Custodian's Motion for Civil Contempt and Sanctions" issued on November 1, 2019, Chancellor Bouchard specifically ordered Custodian Pincus to file future bills supporting petitions under seal but still redact the names of the billing professionals other than himself.[42] The Second Order further restricted access to any billing records filed under seal to the Chancery Court, Custodian Pincus (along with his counsel and advisors), counsel of record for Mr. Shawe and TransPerfect, TransPerfect's general counsel, and TransPerfect's Chief Executive Officer (Mr. Shawe).[43] In a "Records Confidentiality Order" issued the same day, Chancellor Bouchard also precluded TransPerfect, Mr. Shawe, and their representatives from accessing the sealed billing records unless they signed an "Undertaking" agreeing to solely use the billing records to file objections or oppositions to fee petitions and "not…for any other purpose whatsoever, including, without limitation, any business, commercial or public purpose, or in any other litigation or proceeding."[44] The Chancellor further defined the process for objecting to the confidential billing records. The Chancellor limited TransPerfect and Mr. Shawe to one joint objection to each fee petition filed within ten business days of the fee petition.[45] Custodian Pincus could oppose the objections.[46] After full briefing, the Chancellor would then review unredacted versions of contested billing

records *in camera*.[47] TransPerfect must pay the awarded amount of fees within five days of the Chancellor's order.[48]

Chancellor Bouchard explained the confidentiality restrictions implemented as to the billing records would not "impede the company's ability to evaluate the reasonableness of the fees" and were "necessary to prevent against the misuse of this information – a risk that is very real in this case given instances of misconduct by Mr. Shawe that have been well documented in these actions."[49]

### E.    Mr. Shawe and TransPerfect challenge the November 1 Orders in state court.

TransPerfect and Mr. Shawe timely moved Chancellor Bouchard to certify an interlocutory appeal of the November 1 Orders, identifying the alleged impropriety of the confidentiality restrictions as among the issues for appeal.[50] Chancellor Bouchard denied the motion a couple of weeks later.[51] Chancellor Bouchard relied on his previous opinion denying certification of another order and explained it "made no sense" to allow separate interlocutory appeals when he could resolve all outstanding matters – including objections to fee petitions –from which a single interlocutory appeal could be taken.[52]

TransPerfect and Mr. Shawe responded with a timely notice of appeal in the Delaware Supreme Court related to the November 1 Orders, among others.[53] The Delaware Supreme Court dismissed the appeals concluding "the potential benefits of interlocutory review do not outweigh the inefficiency, disruption, and probable costs caused by an interlocutory appeal" as, among other things, the amount of fees possibly owed to the Custodian remain unresolved and the parties continue to dispute objections to the Custodian's fee petitions under the challenged November 1, 2019 Orders.[54]

### F.      Mr. Shawe and TransPerfect object to the fee petitions.

Apparently viewing themselves as without options if they wanted to review the redacted billing records (although never explaining why they could not resort to federal court then), counsel of record for Mr. Shawe and TransPerfect – along with an expert retained by TransPerfect's counsel – signed the Undertaking required by the November 1 Orders to access the confidential billing records and object to the fee petitions.[55] Mr. Shawe and TransPerfect's general counsel declined to sign the Undertaking.[56] Mr. Shawe and TransPerfect filed under seal their objections to Custodian Pincus's fee petitions seeking approximately $250,000 for services provided from June to November 2019.[57] They requested to publicly file the portions of their objections and exhibits but Custodian Pincus demanded they remain under seal.[58] Chancellor Bouchard has not yet ruled on certain objections.[59]

On January 23, 2020, Mr. Shawe and TransPerfect moved to modify or clarify the November 1 Orders so as to allow public disclosure of the non-billing information, while reserving for appeal a constitutional challenge to the confidentiality restrictions they imposed.[60] Chancellor Bouchard granted the motion with modifications and held the November 1 Orders did not prohibit the disclosure of non-billing information.[61]

Chancellor Bouchard requested the parties agree to a confidential mediation.[62] The parties agreed.[63] Shortly thereafter, Chancellor Bouchard stayed the fee objections and other fee-related motions pending the outcome of the mediation.[64]  TransPerfect, Mr. Shawe, and Custodian Pincus could not resolve their dispute.

Over seven months after issuing a stay, Chancellor Bouchard told the parties, "the time has come to set firm deadlines to bring the Custodianship to a prompt conclusion."[65] He directed Custodian Pincus to petition for discharge and for attorneys' fees and expenses not earlier

requested by December 15, 2020.[66] He directed Mr. Shawe and TransPerfect to respond by January 15, 2021.[67] Custodian Pincus timely moved on December 15 to be discharged as custodian and petitioned for all fees incurred between July 2019 and November 2020.[68]

### G. Mr. Shawe and TransPerfect file this case, Chancellor Bouchard announces his retirement from public service, and then lifts the seal and Undertaking obligations on past and future filings.

Mr. Shawe and TransPerfect sued Chancellor Bouchard in his official capacity on December 24, 2020 in this Court, claiming the confidentiality restrictions in the November 1 Orders violated their First and Fourteenth Amendment rights.[69] At or around the same time or shortly after the filing of this case, the business press reported Chancellor Bouchard decided to resign from public service effective April 30, 2021.[70]

Chancellor Bouchard wrote to counsel for both parties after announcing his retirement and two weeks after Mr. Shawe and TransPerfect filed this case asking whether there remained a basis for sealing the Custodian's billing records filed under the November 1 Orders or for future fee petitions.[71] Custodian Pincus now agreed the billing records should be unsealed and the November 1 Orders should be amended to lift confidentiality restrictions on future billing records and fee petitions.[72] Custodian Pincus then filed a separate fee petition on January 8, 2021 seeking approximately $460,000 in addition to amounts sought in his earlier petitions.[73]

Chancellor Bouchard modified the November 1 Orders on January 13, 2021.[74] He specifically rescinded paragraph 3(b) of the Second Order, which mandated billing records be filed confidentially and accessed only by those signing the Undertaking.[75] He further rescinded the Undertaking.[76] He finally ordered the unsealing of all billing records on the docket.[77]

Mr. Shawe and TransPerfect immediately moved to modify the scheduling obligations to give them more time to file and/or supplement objections to fee petitions due the next day (January

15, 2021).[78] They specifically requested the ability to supplement an earlier objection, an extension to February 12, 2021 to object to the December 15, 2020 fee petition, and oral argument on all pending petitions and motions be held during the third week of March 2021.[79] Chancellor Bouchard denied the motion to modify the scheduling obligations in part finding, among other things, the November 1 Orders to be "necessary under the unique circumstances of this case given the substantial risk of misuse during the pendency of this action" and had not impeded Mr. Shawe and TransPerfect's ability to file objections.[80] Chancellor Bouchard nevertheless extended their deadline for objections to the December 15 fee petitions by two weeks, to January 29, 2021.[81] Chancellor Bouchard denied their request to supplement their December 2019 objections.[82] He also ordered oral argument take place during the first week of March 2021.[83] Mr. Shawe and TransPerfect timely objected to the December 15 fee petitions.[84]

Mr. Shawe and TransPerfect then filed the amended Complaint now before us claiming they continue to have a legally cognizable interest in declaratory relief because, despite the Chancellor rescinding the November 1 Orders, they continue to suffer continuing effects from the November 1 Orders.[85] Mr. Shawe and TransPerfect allege Chancellor Bouchard denied them a full and fair opportunity to object to the pending fee petitions after lifting the confidentiality restrictions, and a favorable declaration from this Court could cure these alleged defects.[86]

Chancellor Bouchard held over three hours of oral argument on all outstanding objections to the custodian's now-public fee petitions and outstanding motions on March 2, 2021, including Custodian Pincus's motion for discharge.[87] Chancellor Bouchard held the motions under advisement.

## II.     Analysis

Chancellor Bouchard moves to dismiss the amended Complaint. He argues we lack subject matter jurisdiction as the claims are moot, Mr. Shawe and TransPerfect fail to state a claim, and alternatively we should abstain.[88] Mr. Shawe and TransPerfect respond Chancellor Bouchard's January 13, 2021 recission of the November 1 Orders does not moot their claims because (1) there remains a threat of reimplementation of similar confidentiality restrictions, and (2) Custodian Pincus's fee petitions relating to the November 1 Orders are pending in the Court of Chancery and the Chancellor denied them the full requested extension of time to object to the filings.[89] They further argue the *Younger* doctrine does not apply because this case does not fall within any of the three categories of cases where abstention is appropriate.[90] They finally argue they plausibly allege constitutional claims.[91]

Following oral argument, we conclude the January 13, 2021 Order mooted Mr. Shawe and TransPerfect's request for a declaration the now-rescinded November 1 Orders – primarily the Undertaking and Records Confidentiality Order – unconstitutionally restricted their First Amendment rights because, by issuing such declaratory relief, we would be impermissibly opining on the constitutionality of past conduct. We also find, however, Mr. Shawe and TransPerfect continue to have a concrete stake in their requested due process declaration so long as the proceedings are ongoing in the Chancery Court. We must, however, abstain from exercising jurisdiction over the remaining live due process dispute to avoid unduly interfering with ongoing state court proceedings implicating important state interests. We dismiss the amended Complaint without reaching the question of whether Mr. Shawe and TransPerfect state a claim.

11

**A.     Chancellor Bouchard's January 13, 2021 Order rendered moot most, but not all, relief sought by Mr. Shawe and TransPerfect.**

The Nation's Founders in Article III of the Constitution limited our subject matter jurisdiction to "Cases" and "Controversies."[92] A justiciable case or controversy exists when a plaintiff has a concrete interest in a dispute. The doctrines of standing and mootness aid us in determining whether Mr. Shawe and TransPerfect possess this interest. "Standing ensures that each plaintiff has 'the requisite personal interest…at the commencement of the litigation,' while mootness ensures that this interest 'continue[s] throughout' the duration of the case."[93]

To establish standing, Mr. Shawe and TransPerfect must first show each suffered an injury in fact that is (a) "concrete and particularized" and (b) "actual or imminent, not conjectural or hypothetical."[94] They must then show the injury is fairly traceable to the challenged action of the defendant and it is likely, as opposed to merely speculative, this Court can redress the injury by a favorable decision.[95] While the burden rests on Mr. Shawe and TransPerfect to establish standing upon invoking our limited jurisdiction, the burden shifts to Chancellor Bouchard to demonstrate mootness.[96] The Chancellor bears a "heavy burden" of persuading us there is no longer a live controversy.[97] A case "becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party."[98] "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot."[99]

Our Court of Appeals instructs when plaintiffs seek declaratory relief, a defendant arguing mootness must show "there is no reasonable likelihood that a declaratory judgment would affect the parties' future conduct."[100] We can enter a declaratory judgment "if, and only if, it affects the behavior of the defendant towards the plaintiff."[101] We may not issue declaratory relief where it would "amount to no more than an advisory opinion regarding the 'wrongfulness' of past

conduct."[102] We can, however, issue declaratory relief as to past conduct if it presents "continuing, present adverse effects."[103]

Mr. Shawe and TransPerfect ask us to declare Chancellor Bouchard's seal and confidentiality obligations in the now-rescinded November 1 Orders violated their constitutional rights under the First and Fourteenth Amendments. They first ask we declare "the condition imposed upon Plaintiffs' right to disclose, comment upon, or otherwise engage in a frank and open participation in the marketplace of ideas…is an unconditional restriction upon Plaintiffs' free speech and petition rights."[104] They next ask we declare "the due process clause…prohibit[s] Defendant from requiring Plaintiffs to pay sums sought by the Custodian for fees and expenses allegedly incurred without being afforded full disclosure of the Custodian's billing information and a full and fair opportunity to respond to, and, if appropriate, oppose such petitions…"[105]

Mr. Shawe and TransPerfect may not have faced this mootness argument when they invoked our jurisdiction on Christmas Eve 2020. But Chancellor Bouchard then rescinded the confidentiality restrictions imposed by the November 1 Orders on January 13, 2021. Chancellor Bouchard specifically rescinded the Records Confidentiality Order and Paragraph 3(b) of the Second Order, which provided for the sealing of billing records.[106] He further ordered (1) all previous billing records submitted by Custodian Pincus or his counsel be unsealed; (2) all future fee petitions and billing records submitted by Custodian Pincus or his counsel be filed unsealed; (3) any Undertaking signed by representatives of TransPerfect and Mr. Shawe will have no further force or effect; and (4) any redactions on Custodian Pincus's billing records must comply with Court of Chancery rules.[107]

Two weeks after Chancellor Bouchard lifted the confidentiality restrictions, Mr. Shawe and TransPerfect filed objections to Custodian Pincus's December 15, 2020 fee petition seeking

fees and expenses incurred between July 2019 and November 2020. They further filed objections to a subsequent fee petition filed by Custodian Pincus. Chancellor Bouchard held oral argument approximately five weeks ago affording Mr. Shawe and TransPerfect almost three hours to object to all outstanding fee petitions and motions.

Chancellor Bouchard argues his January 13, 2021 lifting of the confidentiality restrictions and subsequent process given to Mr. Shawe and TransPerfect render moot the declaratory relief Mr. Shawe and TransPerfect sought twenty days earlier and now repeat in the amended Complaint. He argues a declaration would amount to an impermissible advisory opinion. Mr. Shawe and TransPerfect argue they still have a legally cognizable interest in declaratory relief because such relief would impact fee petitions and related objections pending in front of Chancellor Bouchard, which in part relate to Custodian Pincus's work in advocating for the November 1 Orders. We conclude Chancellor Bouchard's recission of the confidentiality restrictions mooted Mr. Shawe and TransPerfect's requested relief under the First Amendment relating solely to the now-rescinded Undertaking and Records Confidentiality Order. It did not, however, moot requested relief as to Fourteenth Amendment due process concerns as to pending fee petitions.

     **1.**     **Mr. Shawe and TransPerfect's First Amendment challenge to the now-rescinded confidentiality obligations is moot because we can no longer afford meaningful relief and there is no reasonable expectation the retiring Chancellor will re-implement confidentiality restrictions.**

Mr. Shawe and TransPerfect initially ask us to declare the condition imposed by the November 1 Orders preventing them from commenting on or publicizing the contents of Custodian Pincus's billing records violated their First Amendment rights. Article III prohibits us from affording such relief. It is undisputed Chancellor Bouchard's January 13, 2021 Order completely lifted this condition and Mr. Shawe, TransPerfect, and their counsel and other representatives are now free to comment on and publicize the content of Custodian Pincus's billing records whenever,

14

wherever, and however they see fit.[108] We cannot opine on the constitutionality of the now-vacated restriction imposed by the November 1 Orders – primarily the Undertaking and Records Confidentiality Order – because such a declaration would amount to nothing more than an advisory opinion regarding the possible unconstitutionality of past conduct.[109]

Our Court of Appeals' decision in *Constand v. Cosby* is instructive.[110] In *Constand*, a news outlet petitioned to lift the seal on certain documents filed during litigation.[111] Judge Robreno ordered the documents unsealed and, within hours of their online posting, multiple news outlets downloaded them and published stories regarding their content.[112] Despite the fact the public could now access these documents through multiple sources, the defendant sought an order resealing the documents, arguing such an order could (1) slow their dissemination; and (2) leave him better positioned to argue in other courts the documents are inadmissible.[113] Our Court of Appeals held it could not grant meaningful relief to affect their dissemination considering the extensive publication surrounding the unsealed documents.[114]

Our Court of Appeals in *Constand* further found "any effect that resealing the documents might have on the numerous legal proceedings that result from sexual assault allegations against Cosby (or might occur in the future) is simply not enough to present a live controversy in this appeal."[115] Our Court of Appeals found defendant's argument an order resealing the documents would leave him "better positioned" to "persuade [other] courts that the documents are inadmissible" to be "fatally flawed."[116] The court explained, "[g]iven that Cosby expressly requests us to provide a basis to make an argument to other courts, he…requests an advisory opinion," which Article III prohibits.[117] It further found such relief to be too speculative because Mr. Cosby "cite[d] no authority to the effect that sealing documents in a civil case would render them inadmissible in another litigation."[118]

15

As in *Constand*, a favorable declaration from this Court as to whether the Undertaking possibly violated the First Amendment could not provide any meaningful relief to Mr. Shawe and TransPerfect. The Chancellor lifted the Undertaking completely and prevented it from having any future force or effect.

We also have no basis to find a reasonable expectation the retiring Chancellor will re-implement confidentiality restrictions like those imposed in the November 1 Orders which could impact First Amendment rights. Except for Mr. Shawe and TransPerfect's speculative assertions, all the facts and circumstances of the underlying proceedings point to the opposite conclusion: Mr. Shawe and TransPerfect will not be subject to similar restrictions again. Chancellor Bouchard rescinded the confidentiality restrictions, prevented them from having future force or effect, and ordered all future fee petitions and billing records to not be filed under seal. His January 13, 2021 Order not only ceased the allegedly unconstitutional conduct but also made clear it will not happen again. We do not think it reasonable to speculate Chancellor Bouchard will change his mind if we dismiss this case and then directly contradict his ruling and resume the challenged conduct.[119]

We are also advised from both sides Chancellor Bouchard has publicly announced his retirement effective in a few weeks. We would need to add another layer of speculation to assume the jurist reassigned this matter will independently decide to implement similar confidentiality restrictions already removed by Chancellor Bouchard.

It is also undisputed Custodian Pincus moved for his discharge as custodian, Mr. Shawe and TransPerfect opposed the motion, and Chancellor Bouchard has heard the parties' arguments regarding the motion and has taken it under advisement.  The custodianship will come to an end soon except for representation of the Custodian in future lawsuits arising from his role. Mr. Shawe and TransPerfect agreed to pay reasonable fees. Considering these speculations compounded upon

16

other speculations, we find no basis to find they remain under a constant threat of reimplementation or reasonable expectation a judicial officer will now re-seal the publicly disclosed information and order counsel and the parties to sign another Undertaking. We face a different issue than addressed by the Supreme Court in reviewing mootness concerns for plaintiffs "remain[ing] under a constant threat of reimplementation" of state action challenged under the First Amendment arising from soon-to-be expiring COVID-19 restrictions imposed by California lawmakers in *Tandon v. Newsom*.[120] While Mr. Shawe and TransPerfect may argue we also face a state actor "moving the goalposts" addressed by the Court in *Tandon* and *South Bay United Pentecostal Church v. Newsom*,[121] the parties do not suggest there are further petitions for confidentiality restrictions before Chancellor Bouchard.[122] Our issue is unlike recurring religious services addressed in the California cases as there is no ongoing risk of First Amendment harm from the November 1, 2019 Orders.

For all practical purposes, our declaration under the First Amendment would only provide an advisory opinion for the parties to cite in the Court of Chancery or on appeal in the Delaware Supreme Court.

### 2. Mr. Shawe and TransPerfect continue to have a concrete stake in a declaration regarding due process as to the pending fee petitions.

We face a different ongoing risk of harm to Mr. Shawe and TransPerfect under the Due Process Clause. Mr. Shawe and TransPerfect also seek a declaration the Due Process Clause "prohibit[s] [Chancellor Bouchard] from requiring [Mr. Shawe and TransPerfect] to pay sums sought by [Custodian Pincus] for fees and expenses allegedly incurred without being afforded full disclosure of [Custodian Pincus's] billing information and a full and fair opportunity to respond, and, if appropriate, oppose such petitions...."[123] Mr. Shawe and TransPerfect claim to still have a concrete interest in this relief because the November 1 Orders – although rescinded – continue to

harm them and Chancellor Bouchard has failed to cure these ongoing harms.[124] They specifically claim Chancellor Bouchard denied them the ability to fully object to pending fee petitions by refusing to extend certain deadlines for objections following the lifting of the confidentiality restrictions.[125] They asserted during oral argument receiving the requested extensions "would cure the [alleged] due process problems."[126] They argue these harms are ongoing, rather than in the past, because all of Custodian Pincus's fee petitions for work incurred since November 1, 2019 – including work in advocating for the November 1 Orders – are pending in front of Chancellor Bouchard.[127] They argue a favorable declaration from this Court could cure the ongoing prejudice caused by the November 1 Orders.[128]

Chancellor Bouchard argues this due process claim regarding pending fee petitions has been mooted because Mr. Shawe and TransPerfect "will be free to make any arguments they see fit concerning the fee petitions during the March 2 hearing…" and because they have already filed voluminous objections.[129] At oral argument, Chancellor Bouchard's counsel similarly argued the claim is moot because "due process was given" and "[t]he fact that the Chancellor heard arguments on that and is considering those issues and will issue a ruling on that issue in the future means that the due process has been satisfied."[130] His counsel further argued "[t]here is nothing Your Honor could do in issuing an order here that would give them the notice and hearing that they've already been given…" and "even if Your Honor believes there is some impairment…from a due process perspective, that is mooted by the fact that they can raise every one of those arguments on appeal to the Delaware Supreme Court."[131]

We disagree and find this argument misses the mark. Chancellor Bouchard's counsel conflates the merits of Mr. Shawe and TransPerfect's Due Process claim with this jurisdictional inquiry. We are not yet concerned with whether Mr. Shawe and TransPerfect, as a matter of law,

had a full and fair opportunity to be heard; our sole concern in assessing mootness is whether Mr. Shawe and TransPerfect continue to have a concrete stake in the requested relief. We find they do.

So long as the Chancery Court proceedings are ongoing, we conclude we can grant effective declaratory relief which would impact Chancellor Bouchard's conduct towards Mr. Shawe and TransPerfect with respect to these pending petitions. While Chancellor Bouchard rescinded the confidentiality restrictions themselves, Mr. Shawe and TransPerfect claim they continue to have present, adverse effects. Mr. Shawe and TransPerfect claim they have been denied the ability to fully respond and object to fee petitions currently pending in front of Chancellor Bouchard, including fee petitions related to the November 1 Orders, because he denied their requests for extensions. From our independent review of the record, Chancellor Bouchard, while granting Mr. Shawe and TransPerfect a two-week extension (Mr. Shawe and TransPerfect requested a four-week extension) to object to Custodian Pincus's December 15, 2020 fee petitions, denied their request to supplement earlier filed objections and declined to extend the hearing on all pending petitions and motions to the end of March.

Without assessing whether Mr. Shawe and TransPerfect received the requisite due process, we conclude this claim for relief is not moot because a favorable declaration from this Court could presumably cure potential prejudice caused by the confidentiality restrictions and the Chancellor's subsequent denial of requested extensions. Chancellor Bouchard's counsel's conclusory assertion a declaration from this Court will not impact the outcome of the rulings on the pending petitions is insufficient to meet his heavy burden in demonstrating we cannot issue any meaningful relief relating to these outstanding petitions whatsoever. Even assuming Chancellor Bouchard chooses not to consider a declaration from this Court, or the practical impact of such a declaration is unclear, "such uncertainty does not typically render cases moot."[132]

In sum, while the January 13, 2021 rescission of the November 1 Orders mooted Mr. Shawe and TransPerfect's clams in part, it did not moot Mr. Shawe and TransPerfect's requested relief regarding due process as to the pending fee petitions. Our Court of Appeals instructs we should "'not dismiss a case as moot,' even if the nature of the injury changes during the lawsuit, if 'secondary or collateral injuries survive after resolution of the primary injury.'"[133] Because we find such "secondary or collateral" injuries asserted here, we decline to dismiss the due process challenges in the amended Complaint as moot.

### B.    We abstain from addressing the due process challenge under *Younger*.

Chancellor Bouchard argues, even if we conclude the January 13, 2021 Order did not moot some or all of the relief requested, we should abstain from exercising jurisdiction on remaining issues because Mr. Shawe and TransPerfect's challenge to possible ongoing effects of the November 1 Orders implicates important state interests from which we should abstain.[134] Mr. Shawe and TransPerfect counter we should not abstain given our overarching obligation to resolve live cases and controversies before us and this case does not fit into any one of the three narrow categories of state proceedings to which abstention typically applies.[135] We agree with Chancellor Bouchard and abstain on the remaining due process claim not mooted by the January 13, 2021 Order.

The judicially created doctrine of *Younger*[136] abstention requires federal courts "abstain from deciding matters where the federal court's decision would cause undue influence with pending state proceedings."[137] *Younger* abstention promotes comity between the national and state governments. "Comity is the 'proper respect for state functions,' and recognizes 'the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief

that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.'"[138]

While *Younger* abstention originally applied only where there were parallel, pending state criminal proceedings, it has since been applied to require we abstain from limited ongoing state civil proceedings. The Supreme Court in *Sprint Communications v. Jacobs*[139] clarified *Younger* abstention applies only in three "exceptional" categories of proceedings: (1) "ongoing state criminal prosecutions"; (2) "civil enforcement proceedings"; and (3) "civil proceedings involving certain orders…uniquely in furtherance of the state courts' ability to perform their judicial functions."[140]

Since the November 1 Orders at issue here do not arise from proceedings that are criminal in nature, we must determine whether they fall within the final *Sprint* category. Courts have found orders which "ensure that….courts can perform their functions" fall into this category, for example, orders protecting the status quo pending appeal and orders setting out a process – like civil contempt – separate from the merits of the litigation.[141] This category recognizes states have important interests in "administering certain aspects of their judicial systems" and "enforcing the orders and judgments of their courts."[142] Orders that do not "lie[] at the core of the administration of a State's judicial system" do not fall within this category.[143]

Our Court of Appeals last year affirmed a district court's invocation of *Younger* to dismiss a constitutional challenge to a state gag order issued in a child custody case.[144] After the state court awarded sole custody of the child to the father, the mother issued a press release and held a press conference where she alleged the father had sexually abused the child.[145] The state court subsequently entered an order (1) prohibiting the mother and her attorneys from speaking publicly or communicating online about the case or encouraging others to do so; (2) requiring them to

remove information they already posted to the internet about the case; and (3) preventing them from providing information that would tend to identify the child if they were to testify before any legislative body.[146]Our Court of Appeals found this gag order fell within the final *Sprint* category because it "govern[ed] the post-judgment conduct of attorney and litigants" and sought to "preserve the state court's power to further one of its uniquely judicial functions – promoting and protecting the best interests of a child whose custody had been previously adjudicated by the court."[147]

We are also guided by Judge Broderick's *Younger* abstention analysis when addressing constitutional challenges to an earlier order entered by Chancellor Bouchard. As Chancellor Bouchard aptly notes, Judge Broderick in *Holland v. Bouchard* dismissed a federal action arising out of the same Court of Chancery proceedings at issue here by applying *Younger*.[148] After Chancellor Bouchard issued an order granting the petition for the forced sale of TransPerfect and appointing Custodian Pincus to oversee the sale, TransPerfect employees began publicly voicing their disagreements and objections to the Chancellor's order, going so far as to form an entity and retaining a public relations firm to voice their concerns to the Delaware legislature.[149] Chancellor Bouchard subsequently entered an order establishing the procedure of the forced sale "which afforded [Custodian] Pincus the right to demand that employees deliver private communications devices for inspection, vested [Custodian] Pincus with full authority over all employment decisions, made all TransPerfect employees subject to sanction by the Delaware Court for failure to cooperate fully, and directed that any employee actions be brought before Chancellor Bouchard."[150] A TransPerfect employee sought declaratory and injunctive relief in connection with Chancellor Bouchard's order in the United States District Court for the Southern District of New York, claiming the order violated his First and Fourth Amendment rights.[151]

Judge Broderick held the challenge fell within the third *Sprint* category, explaining "the Delaware Court of Chancery has a strong interest in enforcing its orders relating to the governance and management of Delaware corporations."[152] In so holding, Judge Broderick expressly rejected the employee's argument that, given the "isolated focus" of the challenge, a federal action would not interfere with the state court's process of obtaining or complying with a state court judgment.[153] He instead found the employee's challenge implicated the Court of Chancery's ability to enforce its order, Custodian Pincus's ability "to fulfill his duties as custodian and carry out the sale," and Delaware's ability "to govern and manage corporations."[154]

Mr. Shawe and TransPerfect do not – and cannot – explain how their challenge is distinguishable from *Holland* with respect to the *Sprint* categories. Nor is their challenge much different than the post-custody analysis from our Court of Appeals in *Silver*. Mr. Shawe and TransPerfect's challenge to the procedural November 1 Orders implicate the same interests at issue in *Holland*. As the Chancellor's counsel described during oral argument, the Delaware General Assembly contemplated both the appointment of a custodian to resolve instances of director deadlock as well as the payment of reasonable compensation to the custodian for their services.[155] The November 1 Orders define the process found appropriate by Chancellor Bouchard to address perceived abuses consistent with his obligations under the Delaware Corporation Code. Chancellor Bouchard found a specific need to clarify the manner by which Custodian Pincus's future billing records would be filed, objected to, and accessed by the parties, thereby allowing Chancellor Bouchard to assess the reasonableness of fees and to ultimately order payment be made to Custodian Pincus for his work related to TransPerfect and to enforce the parties' Securities Purchase Agreement.  As in *Holland*, Mr. Shawe and TransPerfect's due process challenge seeks to interfere with the Chancellor's ongoing ability to ensure he can perform functions contemplated

by the Delaware General Assembly to manage the sale of entities after a judgment confirming director deadlock harming the entity under section 226. It also would interfere with Custodian Pincus's ability to carry out his duties as custodian and receive compensation for the performance of these duties as defined by the parties and affirmed by the Chancellor and Delaware Supreme Court.[156]

The November 1 Orders further prohibited Mr. Shawe, TransPerfect, and their attorneys from publicizing the billing records or using them for any reason outside of the proceedings. Such confidentiality orders, like our Court of Appeals analyzed in *Silver*, govern the conduct of parties and allow courts to protect the integrity of their proceedings, and are therefore central to the administration of judicial functions.

Mr. Shawe and TransPerfect's reliance on our Court of Appeals' recent non-precedential opinion in *Parr v. Colantonio* is misplaced. The plaintiff in *Parr* alleged a state actor violated his civil rights in effectuating a state court's order of possession.[157] Our Court of Appeals found the district court erred in abstaining under *Younger* because it did not address the *Sprint* categories.[158] Our Court of Appeals noted "a possession order arising from a commonplace eviction action" does not fit within the final *Sprint* category.[159] Unlike the ordinary order arising from an ordinary proceeding in *Parr*, the November 1 Orders set forth a process regarding confidentiality of billing information due to unique concerns arising from the circumstances of the forced sale proceedings authorized by the Delaware General Assembly as part of the Chancery Court's core functions.

The November 1 Orders fall squarely within the final *Sprint* category because they allow the Court of Chancery, which primarily handles unique corporate matters like these, to administer its processes and ensure compliance with its orders and judgments. The November 1 Orders are

not ancillary to the statutory process; they instead foster and protect this core obligation of the Chancery Court and its appointed state actor Custodian.

Having found this case fits within the final "exceptional" categories of cases warranting *Younger* abstention, we must consider whether three additional conditions, referred to as the *Middlesex* factors, apply: (1) there are ongoing state judicial proceedings; (2) the proceedings implicate important state interests; and (3) the proceedings afford an adequate opportunity to raise constitutional claims.[160] We find the undisputed facts satisfy each of the three *Middlesex* factors. First, the forced sale proceedings in the Court of Chancery – to which Mr. Shawe and TransPerfect are parties – are ongoing.  Second, the proceedings implicate Delaware's important and unique interest in the management and regulation of corporations as specifically defined by the Delaware General Assembly.  The issues presently before Chancellor Bouchard are directly and intrinsically related to his statutory obligations under sections 226 and 291 of the Delaware General Corporation Law. We cannot find, and no one offers contrary authority, a basis to discount statutory mandates relating to the Chancellor's obligation to manage a forced sale in the event of a judicially found corporate deadlock among directors of a Delaware corporation. Finally, Mr. Shawe and TransPerfect have an adequate opportunity to raise their constitutional claims in state court. Chancellor Bouchard and the Delaware Supreme Court have recognized Mr. Shawe and TransPerfect's ability to raise constitutional claims with respect to the November 1 Orders in state court. The Delaware Supreme Court held only Mr. Shawe and TransPerfect's appeals of various Court of Chancery orders, including of the November 1 Orders, did not fall within the collateral order doctrine and could not, therefore, be appealed in a piecemeal fashion. The court explained "[i]n light of the issues still to be determined," it would be more efficient to wait for the resolution

of these pending issues and then file a single, interlocutory appeal certified by the Court of Chancery or, alternatively, file an appeal from a final order entered in the case.[161]

In sum, we conclude *Younger* abstention is appropriate because the challenged November 1 Orders fit within the final *Sprint* category of orders "uniquely in furtherance of the state courts' ability to perform their judicial functions."[162] We further find the pending Court of Chancery forced sale proceedings meet the three *Middlesex* factors.

## III.   Conclusion

We must dismiss Mr. Shawe's and TransPerfect's claims for declaratory or injunctive relief as we lack jurisdiction over the First Amendment claims mooted by Chancellor Bouchard's January 13, 2021 Order.   The Undertaking and Records Confidentiality Order are no longer in effect. Mr. Shawe and TransPerfect do not cite a fact basis and instead speculate as to First Amendment harm recurring in the future by a newly assigned Chancellor should further matters arise in the state courts after Chancellor Bouchard's rulings on the pending motions and his retirement from judicial service later this month.   We must otherwise abstain from involving federal courts in a due process review of ongoing proceedings involving important state interests under the Delaware General Corporation Law which, if warranted and necessary, could be remedied by the Chancellor or the Supreme Court of Delaware.

---

[1] ECF Doc. No. 12 ¶¶ 18–19. The founders incorporated TransPerfect in Delaware but, under Mr. Shawe's control, reincorporated in Nevada in August 2018. *See id.* ¶ 14; *In re TransPerfect Glob., Inc.*, Nos. 9700 & 10449, 2019 WL 5260362, at *8 n.56 (Del. Ch. Oct. 17, 2019).

[2] ECF Doc. No. 12 ¶¶ 15, 21.

[3] *Id.* ¶ 22.

[4] *Id.* ¶¶ 23–25; *see In re Shawe & Elting LLC*, Nos. 9661, 9686, 9700, & 10499, 2015 WL 4874733, at *18 (Del. Ch. Aug. 13, 2015). The Delaware General Assembly authorizes the Court of

Chancery to appoint a custodian if a corporation is "suffering or is threatened with irreparable injury because the directors are so divided respecting the management of the affairs of the corporation" that the required vote cannot be obtained to end the division. 8 Del. Code § 226 (a)(2) (2021); *see also Giuricich v. Emtrol Corp.*, 449 A.2d 232, 238 (Del. 1982) (explaining in amending section 226: "Manifestly, the General Assembly intended to create a more liberal and readily available remedy in shareholder deadlock situations."). The General Assembly further grants a court-appointed custodian all the authority a receiver is given in the context of insolvency. § 226(b). Receivers in the insolvency context are entitled to "reasonable compensation" for their services and "the costs and expenses incurred in and about the execution of such receiver's or trustee's trust, and the cost of the proceedings in the Court." *Id.* § 298; *see also R.H. McWilliams, Jr., Co. v. Missouri-Kansas Pipe Line Co.*, 190 A. 569, 576 (Del. Ch. 1936) ("As receivers and their counsel are officers of the court, acting by designation of the court in aid of its task of administering an estate, they are entitled to be compensated for their services and reimbursed [their] out of pocket expenses.").

[5] ECF Doc. No. 12 ¶ 26 (citing *In re Shawe & Elting LLC*, 2015 WL 4874733).

[6] *Id.* ¶ 27 (citing *In re Shawe & Elting LLC*, 2015 WL 4874733, at *32). Chancellor Bouchard's counsel advised during oral argument of the need to compensate qualified custodians at their fair market rate to attract professionals qualified to manage the sale of an ongoing entity. Transcript of Oral Argument at 23–27. Mr. Shawe and TransPerfect did not dispute this representation nor did they argue the Chancellor's appointment of a custodian following a judicial finding of deadlock is contrary to the Law.

[7] *Id.* ¶ 28 (quoting *In re TransPerfect Glob., Inc.*, No. 9700, 2015 WL 4778615, at *1–2 (Del. Ch. Aug. 13, 2015)).

[8] *Id.*

[9] *Id.* ¶ 30.

[10] *See Shawe v. Elting*, 157 A.3d 152 (Del. 2017).

[11] ECF Doc. No. 12 ¶ 33.

[12] *Id.* ¶ 37 (citing *In re TransPerfect Glob., Inc.*, Nos. 9700, 10449, 2016 WL 3477217 (Del. Ch. June 20, 2016)).

[13] *Id.* (citing *In re TransPerfect Glob., Inc.*, 2016 WL 3477217).

[14] *In re TransPerfect Glob., Inc.*, Nos. 9700, 10449, 2018 WL 904160, at *6 (Del. Ch. Feb. 15, 2018).

[15] *Id.* at *7.

[16] *Id.* at *1–2; ECF Doc. No. 12 ¶ 39.

---

[17] *In re TransPerfect Glob., Inc.*, 2018 WL 904160, at *12; ECF Doc. No. 12 ¶ 40.

[18] ECF Doc. No. 12 ¶ 52.

[19] *In re TransPerfect Glob., Inc.*, 2018 WL 904160, at *1.

[20] ECF Doc. No. 12 ¶ 45 (citing *In re TransPerfect Glob., Inc.*, 2018 WL 904160).

[21] *Id.*

[22] ECF Doc. No. 23 at 9.

[23] ECF Doc. No. 12 ¶ 46 (citing *Elting v. Shawe*, 185 A.3d 694 (Del. 2018)).

[24] *Id.* ¶ 47.

[25] *Id.*

[26] *See id.* ¶¶ 48–50.

[27] *Id.* ¶ 50.

[28] *Id.* ¶ 49.

[29] *Id.* ¶ 55.

[30] *Id.* ¶ 48. We are not opining on the propriety of $44.5 million in fees awarded to the custodian before November 1, 2019 without the filing of supporting billing records nor are we concerned with the propriety of the millions of dollars now sought by the custodian. Those issues are before the Chancellor with right to appeal to the Supreme Court of Delaware.

[31] *Id.* ¶¶ 54, 56.

[32] *Id.* ¶ 57 (first citing *Cypress Partners, LLC v. Shawe*, JAMS Ref. No. 1425028705; then citing *TransPerfect Glob., Inc. v. H.I.G. Middle Mkt., LLC and Lionbridge Techs., Inc.*, No. 19-3283 (S.D.N.Y 2019)).

[33] *Id.* ¶¶ 59–60.

[34] *Id.* ¶ 61.

[35] *Id.* ¶ 62.

[36] *Id.* ¶ 63.

[37] *Id.* ¶ 64.

[38] *Id.* ¶ 65.

---

[39] *Id.* ¶ 66.

[40] ECF Doc No. 23 at 10 (internal quotation marks omitted); ECF. No. 24-3 at 6–7.

[41] ECF Doc. No. 24-3 at 9.

[42] ECF Doc. No. 24-2. Chancellor Bouchard's Order appears to have been largely adopted from a proposed order submitted by Custodian Pincus. *Compare id.*, *with* ECF Doc. No. 26-1.

[43] ECF Doc. No. 24-2 at 3.

[44] ECF Doc. No. 24-2 at 3–4. The Chancellor's Second Order mandated:

3. All future fee petitions… shall be made pursuant to the following process:

(a) As an exhibit to any fee petition submitted to the Court by the Custodian, the Custodian shall attach an invoice, billing record or other document (a "Confidential Record") providing…information as to work for which payment is sought . . . . The Custodian may redact from such Confidential Records: (i) the names of all persons performing work for which payment is sought; provided, however, that any redacted names of persons performing work for which payment is sought ( other than the Custodian) shall be replaced with distinct and definite designations such as "Timekeeper A," "Timekeeper B" or similar, and any such designations shall remain constant throughout all Confidential Records for any person so designated and no distinct designation shall ever be used for more than one person; and (ii) information that the Custodian deems in good faith to be privileged or of a sensitive nature, including, but not limited to, the names of any individuals referenced in billing details.

(b) The Confidential Records specified in Paragraph 3(a) herein shall be filed confidentially with the Court in connection with filing the fee petition. No persons or entities other than (i) the Court; (ii) the Custodian, his counsel and his advisors; (iii) counsel of record representing TPG or Philip R. Shawe ("Shawe") in the above-captioned actions; (iv) the General Counsel of TPG; and (v) the Chief Executive Officer of TPG may receive or otherwise access Confidential Records or Confidential Records Filings (as defined in the Records Confidentiality Order); provided, however, that (except for the Court, the Custodian, his counsel and his advisors) no such person shall be entitled to receive or otherwise access Confidential Records or Confidential Records Filings until such time as he or she has executed and filed with the Court the Undertaking agreeing to be bound by the Records Confidentiality Order attached hereto as Exhibit A which shall be approved and entered by the Court in connection with this Order. Confidential Records and Confidential Records Filings shall be used solely for purposes of (i) any fee petition filed with the Court by the Custodian or (ii) any objection, opposition or reply submission filed with the Court pursuant to Paragraph 3(c) herein, and shall not be used for any other purpose whatsoever, including, without limitation, any business, commercial or public purpose, or in any other litigation or proceeding. There is good cause to provide confidential treatment to documents and information regarding the fee petition process, including the Confidential Records, Confidential Records Filings and any information therein, and any public interest in disclosure of such documents or information other than as set forth herein is outweighed by the harm that such disclosure would cause.

---

*Id.*

[45] *Id.* at 4.

[46] *Id.*

[47] *Id.*

[48] *Id.* at 5. We collectively refer to the Second Order, the Records Confidentiality Order, and the Undertaking as the "November 1 Orders."

[49] ECF Doc. No. 24-3 at 11–12. We do not opine as to the Chancellor's reasons for the seal and Undertaking as we remain mindful of Mr. Shawe's documented history of misconduct shown to the Chancellor. In 2013, for instance, Mr. Shawe became angry because Ms. Elting retained a law firm to help resolve disputes between Mr. Shawe and her. *In re Shawe & Elting LLC*, 2016 WL 3951339, at *1. His anger led him to "undert[ake] a campaign to spy on Elting," including by directing employees to intercept her mail and monitor her phone calls and private emails, even her privileged communications with her counsel. *Id.* at *1–2. He later declined to preserve – and even deleted – relevant data on his phone or laptop after receiving litigation hold notices. *Id.* at *3–7. He also provided false testimony during litigation regarding these activities. *Id.* at *8–11. The Court of Chancery, after an evidentiary hearing, sanctioned Mr. Shawe for his behavior and ordered he pay a portion of her attorney's fees finding "clear evidence…Shawe acted in bad faith and vexatiously" during the litigation. *Id.* at *13, 19–20. The Delaware Supreme Court affirmed the Court of Chancery's judgment, agreeing Mr. Shawe's demonstrated "unusually deplorable" behavior. *Shawe v. Elting*, 157 A.3d 142, 145 (Del. 2017) (quoting *In re Shawe & Elting LLC*, 2016 WL 3951339, at *13).

Mr. Shawe, possibly unhappy with his progress in the Delaware courts, sued Ms. Elting's counsel in this Court in 2017 alleging opposing counsel misrepresented the fees incurred in computing the sanctions in the Court of Chancery. *Shawe v. Potter Anderson & Corroon LLP*, No. 17-1348, 2017 WL 6397342, at *2 (D. Del. Dec. 8, 2017). Ms. Elting's counsel moved for Rule 11 sanctions against Mr. Shawe, arguing he filed a frivolous lawsuit attempting to re-litigate the same issues raised – and rejected – in the Court of Chancery and Delaware Supreme Court. *Id.* at *3. Chief Judge Jones III, sitting by designation, agreed and sanctioned Mr. Shawe, explaining he "ha[d] no qualms" in concluding sanctions were warranted. *Id.* He also *sua sponte* dismissed the action with prejudice, concluding "[Mr.] Shawe's purpose in presenting the court with the complaint and the amended complaint was to harass the Defendants and to abuse the court system." *Id.* at *4. Chief Judge Jones found it significant that the Supreme Court of New York previously dismissed with prejudice three lawsuits brought by Mr. Shawe attacking the Court of Chancery's decisions because of the lawsuits' "borderline frivolity." *Id.* at *2 (internal quotation marks omitted) (quoting *Shawe v. Elting*, Nos. 153375, 652482, 652664, 2017 WL 2882221, at *28–29 (N.Y. Sup. Ct. June 29, 2017)). While Chief Judge Jones declined to issue a filing injunction against Mr. Shawe, he offered a "future court plagued by subsequent frivolous lawsuits brought by [Mr.] Shawe to collaterally attack the Delaware rulings should very seriously consider imposing an injunction to put a final end to this behavior." *Id.* at *5. We decline to do so today given the Chancellor's response to this lawsuit on January 13, 2021. Nor do we opine on the Chancellor's grounds to lift the confidentiality restrictions on January 13, 2021 with the Custodian's consent.

---

[50] ECF Doc. No. 12 ¶¶ 91–92.

[51] *Id.* ¶ 95 (citing *In re TransPerfect Glob., Inc.*, Nos. 9700, 10449, 2019 WL 6358786, at *1 (Del. Ch. Nov. 27, 2019)).

[52] *In re TransPerfect Glob., Inc.*, 2019 WL 6358786, at *1; *see also In re TransPerfect Glob., Inc.*, Nos. 9700, 10449,2019 WL 6130807, at *5 (Del. Ch. Nov. 18, 2019).

[53] ECF Doc. No. 12 ¶ 94.

[54] *TransPerfect Glob., Inc. v. Pincus*, Nos. 439, 441, 501, 509, 2019 WL 7369433, at *3 (Del. 2019)).

[55] ECF Doc. No. 12 ¶ 101.

[56] *Id.*

[57] *Id.* ¶ 102; ECF Doc. No. 24-15. Custodian Pincus apparently sought payment of approximately $250,000 for this period. *See* ECF Doc. No. 24-15.

[58] ECF Doc. No. 12 ¶¶ 103–04.

[59] *Id.* ¶ 107.

[60] *Id.* ¶ 109.

[61] *Id.* ¶ 110.

[62] *Id.* ¶ 113.

[63] *Id.*

[64] *Id.*

[65] ECF Doc. No. 24-7 at 1.

[66] *Id.* at 2.

[67] *Id.*

[68] *See generally* ECF Doc. No. 26-12. Custodian Pincus apparently sought payment of over three-million dollars, which included fees for his work related to the contempt motion after the Nevada filing. ECF Doc. No. 24-8 at 9.

[69] ECF Doc. No. 1 at 36–37.

[70] *See e.g.* Jacob Owens, *Chancellor Bouchard to Retire in April*, DELAWARE BUSINESS TIMES (Dec. 29, 2020), https://delawarebusinesstimes.com/news/chancellor-bouchard-to-retire/.

[71] ECF Doc. No. 12 ¶¶ 117–18.

[72] *Id.* ¶ 118.

[73] ECF Doc. No. 24-8 at 9; ECF Doc. No. 24-10.

[74] *Id.* ¶ 119.

[75] ECF Doc. No. 24-1 ¶ 1.

[76] *Id.* ¶ 2.

[77] *Id.* ¶ 3. The Chancellor summarized the updated rules:

> For the avoidance of doubt, as a result of this order (a) any future fee petitions of the Custodian and/or his counsel and any Billing Records filed with the Court shall not be filed under seal, (b) any undertakings that were entered into pursuant to Section 3(b) of the Second Order of the Records Confidentiality Order shall have no further force or effect, and (c) the Custodian's redaction of information under paragraph 3(a) of the Second Order must comply with the standards set forth in Court of Chancery Rule 5.1.

> *Id.* ¶ 4.

[78] ECF Doc. No. 12 ¶¶ 120–21.

[79] Denied ([Proposed] Order to Motion of TransPerfect Global Inc. and Philip R. Shawe for an Order Modifying the Court's November 30, 2020 Order Pursuant to Court of Chancery Rule 60(b)), *In re TransPerfect Glob., Inc.*, No. 9700 (Del. Ch. Jan. 15, 2021).

[80] *Id.* at 3.

[81] *Id.*

[82] *Id.*

[83] *Id.*

[84] ECF Doc. No. 24-8.

[85] ECF Doc. No. 12 ¶¶ 120–29.

[86] *See id.* We are not addressing the merits of Custodian Pincus's fees either awarded before the November 1, 2019 Order or now before the Chancellor for review. We are also not opining on Mr. Shawe's and TransPerfect's repetitive references to an alleged symbiotic give-and-take relationship between the Court of Chancery and Custodian Pincus's law firm which are seemingly

plead to challenge the amount and veracity of the Custodian's fees not disclosed to the public until mid-January 2021.

[87] ECF Doc. No. 24-10 at 3.

[88] ECF Doc. No. 23 at 14–17. "A challenge for mootness is properly brought by a Rule 12(b)(1) motion, and constitutes a factual attack on the jurisdictional facts; thus, the court may consider evidence outside the pleadings." *Sourovelis v. City of Philadelphia*, 103 F. Supp. 3d 694, 700 (E.D. Pa. 2015) (citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176–77 (3d Cir. 2000)). A claim may be dismissed under Rule 12(b)(1) "only if it 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or is wholly insubstantial and frivolous.'" *Gould*, 220 F.3d at 178 (quoting *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

[89] ECF Doc. No. 25 at 11–17.

[90] *Id.* at 18–22.

[91] *Id.* at 22–25.

[92] U.S. Const. art. 3, § 2.

[93] *Freedom from Religion Found. Inc. v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 476 (3d Cir. 2016) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997)).

[94] *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000).

[95] *Id.* at 180–81.

[96] *Hartnett v. Penn. State Educ. Ass'n*, 963 F.3d 301, 305–06 (3d Cir. 2020).

[97] *Hartnett*, 963 F.3d at 305–06 (quoting *Friends of the Earth, Inc.*, 528 U.S. at 189); *see also Rendell v. Rumsfeld*, 484 F.3d 236, 240 (3d Cir. 2007) ("The central question of all mootness problems is whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." (internal quotation marks omitted) (quoting *In re Surrick*, 338 F.3d 224, 230 (3d Cir. 2003))).

[98] *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (internal quotation marks omitted) (quoting *Knox v. Serv. Emp.'s*, 567 U.S. 298, 307 (2012)).

[99] *Id.* (internal quotation marks omitted) (quoting *Knox*, 567 U.S. at 307–08).

[100] *Hartnett,* 963 F.3d at 306.

[101] *Id.* (internal quotation marks omitted) (quoting *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988)). The Supreme Court recently held a request for nominal damages alone defeated mootness because "[d]espite being small, nominal damages are certainly concrete," "affect the behavior of the defendant towards the plaintiff," and "effectuate a partial remedy." *Uzuegbunam v. Preczewski*,

141 S. Ct. 792, 801 (2021) (second internal quotation marks omitted) (first quoting *Hewitt v. Helms*, 482 U.S. 755, 761 (1987); then quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 13 (1992)).

[102] *Policastro v. Kontogiannis*, 262 F. App'x 429, 433 (3d Cir. 2008).

[103] *See O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).

[104] ECF Doc. No. 12 at 43.

[105] *Id.*

[106] ECF Doc. No. 24-1 ¶¶ 1–2.

[107] *Id.* ¶¶ 3–4.

[108] *See* ECF Doc. No. 12 ¶ 126 ("The fact that the Defendant continues to maintain that the unconstitutional gag orders were not improper, despite lifting them completely….").

[109] *See Mollett v. Leicth,* 511 F. App'x 172, 174 (3d Cir. 2013) ("[I]n the context of an action for declaratory relief, a plaintiff must be seeking more than a retrospective opinion that he was wrongfully harmed by the defendant." (internal quotation marks omitted) (quoting *Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011))).

[110] 833 F.3d 405 (3d Cir. 2016).

[111] *Id.* at 407–08.

[112] *Id.* at 408.

[113] *Id.* at 410–11.

[114] *Id.* at 410; *see also Hamilton v. Bromley*, 862 F.3d 329, 335 (3d Cir. 2017) (dismissing request for injunctive and declaratory relief as moot because "the illegal conduct of which [plaintiff] complains – being separated from his son and deprived of contact with him – is no longer occurring").

[115] *Constand,* 833 F.3d at 411.

[116] *Id.*

[117] *Id.*

[118] *Id.*

[119] This fact pattern is distinguishable from cases involving voluntary cessation by private defendants. *See* 13C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal*

*Practice and Procedure* § 3533.7 (3d ed. 2020) (noting there are "substantial disparities" between challenges to discontinued private action and discontinued official action because "[c]ourts are more likely to trust public defendants to honor a professed commitment to change ways); *see also id.* § 3533.5 (explaining mootness inquiries require courts to make certain predictions, including as to "the probability of recurrence," and that the "process of prediction also is shaped by the character of the defendant—claims of discontinuance by public officials are more apt to be trusted than like claims by private defendants"); *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1116 n.15 (10th Cir. 2010) (recognizing "despite *Laidlaw*'s heavy burden, some courts have expressly treated governmental officials' voluntary conduct 'with more solicitude' than that of private actors." (quoting *Ragsdale v. Turnock*, 841 F.2d 1358, 1365 (7th Cir. 1988)).

[120] No. 20A151, 2021 WL 1328507, at *1 (Apr. 9, 2021) (per curiam) (internal quotation marks omitted).

[121] 141 S. Ct. 716, 720 (2021) (statement of Gorsuch, J.).

[122] Mr. Shawe and TransPerfect claim Custodian Pincus's proposed order accompanying his motion for discharge creates an additional threat of reimplementation of confidentiality restrictions. ECF Doc. No. 25 at 13-14. They specifically point to provisions in the proposed order which, if implemented as written, would (1) allow Custodian Pincus to effectuate various portions of the Securities Purchase Agreement including a non-disparagement clause; (2) require Mr. Shawe and TransPerfect to indemnify Custodian Pincus and his lawyers for fees related to "efforts to pursue, enforce, or clarify [Custodian] Pincus's or Skadden's protections and rights" under various orders; and (3) create a process by which Custodian Pincus could continue to petition the court for any future fees incurred relating to indemnification or other payment obligations. *Id.* at 13 (citing ECF Doc. No. 26-12 ¶¶ 3, 10, 12-14). But none of the provisions mention confidentiality regarding fee petitions or billing records. Any argument regarding these provisions would go well beyond the scope of the claims in the amended Complaint. They do not demonstrate a risk of reimplementation of confidentiality restrictions like those in the November 1 Orders.

[123] ECF Doc. No. 12 at 43.

[124] *Id.* ¶ 154.

[125] *Id.* ¶¶ 120–23.

[126] Transcript of Oral Argument at 44.

[127] ECF Doc. No. 12 at ¶¶ 126–27, 129

[128] *Id.* ¶ 149.

[129] ECF Doc. No. 23 at 16.

[130] Transcript of Oral Argument at 10; *see also id.* at 11 ("The question is whether they have been granted due process to object to those fees, and they have. And that is why their claims are moot."); *id.* at 7 ("The reason [a ruling] would not affect the matters pending before the Chancery Court at

the moment is because plaintiffs have been given due process. Due process requires a notice and a hearing, and they were given that with respect to all of the pending fee petitions.").

[131] *Id.* at 11, 14.

[132] *Chafin*, 568 U.S. at 175 ("Courts often adjudicate disputes where the practical impact of any decision is not assured.").

[133] *Freedom from Religion Found. Inc.*, 832 F.3d at476 (quoting *Chong v. Dist. Dir., I.N.S.*, 264 F.3d 378, 384 (3d Cir. 2001)).

[134] ECF Doc. No. 23 at 17–20.

[135] ECF Doc. No. 25 at 18–22.

[136] *Younger v. Harris*, 401 U.S. 37 (1971).

[137] *G.S. by and through F.S. v. Rose Tree Media Sch. Dist.*, 393 F. Supp. 3d 420, 424 (E.D. Pa. 2019).

[138] *Id.* (quoting *Younger*, 401 U.S. at 44).

[139] 571 U.S. 69 (2013).

[140] *Id.* at 78 (second and third internal quotation marks omitted) (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989)).

[141] *See Malhan v. Sec'y U.S. Dep't of State*, 938 F.3d 453, 463 (3d Cir. 2019).

[142] *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 12-13 (1987).

[143] *Parr v. Colantonio*, No. 19-2967, 2021 WL 375029, at *2 n.3 (3d Cir. Feb. 3, 2021) (alteration in original) (internal quotation marks omitted) (quoting *Juidice*, 430 U.S. at 335).

[144] *Silver v. Court of Common Pleas of Allegheny Cty.*, 802 F. App'x 55, 58 (3d Cir. 2020).

[145] *Id.* at 56–57.

[146] *Id.* at 57.

[147] *Id.* at 58.

[148] No. 16-5936, 2017 WL 4180019, at *3–4 (S.D.N.Y. Sept. 19, 2017)).

[149] *Id.* at *1–2.

[150] *Id.* at *2.

[151] *Id.*

[152] *Id.* at *3.

[153] *Id.*

[154] *Id.*

[155] Transcript of Oral Argument at 24–26; 8 Del. Code §§ 226, 291 (2019).

[156] *See In re Topps Co. S'holders Litig.*, 924 A.2d 951, 954 (Del. Ch. 2007) ("No principle of corporation law ... is more firmly established than a state's authority to regulate domestic corporations.... The beneficial free market system depends at its core upon the fact that a corporation – except in the rarest of situations – is organized under, and governed by, the law of a single jurisdiction, traditionally the State of its incorporation.... A state has an interest in promoting stable relationships among parties involved in the corporations it charters." (quoting *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 89 (1987))).

[157] *Parr*, 2021 WL 375029, at *1.

[158] *Id.* at *2.

[159] *Id.* at *2 n.3.

[160] *See Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423 (1982). In *Middlesex*, the Supreme Court concluded the federal courts must apply *Younger* abstention when an attorney subject to ongoing disciplinary procedures by a state bar filed a federal lawsuit challenging the constitutionality of the disciplinary rules used in the procedures. *Id.* at 427–29. The Court explained states have an "extremely important interest in maintaining and assuring the professional conduct of the attorneys [they] license[]." *Id.* at 434.

[161] *TransPerfect Glob., Inc.*, 2019 WL 7369433, at *2; *see Aaron v. O'Connor*, 914 F.3d 1010, 1018–19 (6th Cir. 2019) (finding state proceedings provided plaintiffs an adequate opportunity to raise constitutional arguments where "the plaintiffs may appeal any potential adverse final decision of the state trial court," and explaining "[t]he fact that this approach requires the use of the appellate process (including a potential petition for a writ of certiorari in the U.S. Supreme Court) does not render it inadequate").

[162] *Sprint Commc'ns, Inc.*, 571 U.S. at 78.